UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

          v.

SEQUENTIAL BRANDS GROUP, INC.,

                    Defendant.

Case No. 1:20-cv-10471 (JPO)

*ORAL ARGUMENT REQUESTED*

**MEMORANDUM OF LAW OF DEFENDANT SEQUENTIAL BRANDS GROUP, INC.
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile:  (212) 351-4035

Dated: February 25, 2021

*Attorneys for Sequential Brands Group, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARD ............................................................................................. 6

ARGUMENT ......................................................................................................... 6

    I.    The Negligence-Based Fraud and False-Filing Claims (Counts 1 & 2)
        Fail to Plead Essential Elements. .............................................................6

        A.    The Complaint Fails to Plead an "Offer or Sale of Any Securities" ...........7

        B.    The Complaint Fails to Plead Scheme Liability as a Matter of Law. ........10

        C.    The Complaint Fails to Prove Falsity as a Matter of Law. .......................13

        D.    The Alleged Misstatements and Omissions Were Immaterial as a
            Matter of Law. ........................................................................................18

    II.    The Accounting & Internal Controls Claims (Counts 3 & 4) Fail as
        a Matter of Law..........................................................................................22

        A.    The Complaint Does Not Adequately Allege an Accounting
            Violation ...............................................................................................22

        B.    The Complaint Does Not Sufficiently Allege an Absence of
            Requisite Internal Controls Over Financial Reporting. ............................23

CONCLUSION...................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brody v. Transt'l Hospitals Corp.*,
   280 F.3d 997 (9th Cir. 2002) ................................................................17

*In re Cannavest Corp. Sec. Litig.*,
   307 F. Supp. 3d 222 (S.D.N.Y. 2018)......................................................12

*In re Cendant Corp. Sec. Litig.*,
   76 F. Supp. 2d 539 (D.N.J. 1999)............................................................9

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)....................................................................1

*Childers v. Northwest Airlines, Inc.*,
   688 F. Supp. 1357 (D. Minn. 1988)..........................................................9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ............................................................15, 16

*City of Omaha Civilian Empls. Ret. Sys. v. CBS Corp.*,
   679 F.3d 64 (2d Cir. 2012)....................................................................16

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..............................................................18, 21

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)....................................................................14

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
   873 F.3d 85 (2d Cir. 2017)....................................................................18

*Fraser v. Fiduciary Tr. Co., Int'l*,
   2005 WL 6328596 (S.D.N.Y. June 23, 2005) ..........................................8

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000)..................................................18, 19, 20, 21

*GBJ Corp. v. Sequa Corp.*,
   804 F. Supp. 564 (S.D.N.Y. 1992) ..........................................................9

*Geiger v. Solomon-Page Grp., Ltd.*,
   933 F. Supp. 1180 (S.D.N.Y. 1996)..........................................................21

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Harris v. Amtrust Fin. Servs.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015)......................................................................22

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)..............................................................................................6

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of*
    *Scotland Grp., PLC*,
    783 F.3d 383 (2d Cir. 2015)...................................................................................19, 20

*Int'l Brotherhood of Teamsters v. Daniel*,
    439 U.S. 551 (1979)................................................................................................8, 9, 10

*Kleinman v. Elan Corp., PLC*,
    706 F.3d 145 (2d Cir. 2013)........................................................................................17

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991).....................................................................................1, 4

*Lampkin v. UBS Fin. Servs., Inc.*,
    925 F.3d 727 (5th Cir.), *cert. denied*, 140 S. Ct. 389 (2019)................................8, 9

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)........................................................................................11

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002)..........................................................................6

*Menaldi v. Och–Ziff Capital Mgmt. Grp. LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017).......................................................................13

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty.*
    *Ret. Ass'n v. MDC Partners, Inc.*,
    2016 WL 5794774 ........................................................................................................16

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015).........................................................................................14, 16

*S.E.C. v. Brown*,
    740 F. Supp. 2d 148 (D.D.C. 2010) ............................................................................7

*S.E.C. v. Goldstone*,
    952 F. Supp. 2d 1060 (D.N.M. 2013) .................................................................12, 13

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................18

*SEC v. Bankatlantic Bancorp, Inc.*,
    2012 WL 1936112 (S.D. Fla. May 29, 2012) ........................................25

*SEC v. Coffman*,
    2007 WL 2412808 (D. Colo. Aug. 21, 2007) ........................................22

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011)..............................................11, 12

*SEC v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010)....................................................12

*SEC v. Lucent Techs., Inc.*,
    610 F. Supp. 2d 342 (D.N.J. 2009) ........................................................13

*SEC v. Monarch Funding Corp.*,
    192 F.3d 295 (2d Cir. 1999)....................................................................11

*SEC v. Rio Tinto PLC*,
    2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019) ......................................13

*SEC v. Softpoint, Inc.*,
    958 F. Supp. 846 (S.D.N.Y. 1997) ..................................................22, 23

*SEC v. Stanard*,
    2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) ........................................6, 7

*SEC v. Stoker*,
    865 F. Supp. 2d 457 (S.D.N.Y. 2012)....................................................11

*SEC v. World-Wide Coin*,
    567 F. Supp. 724 (N.D. Ga. 1983)..........................................................24

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008)................................................................................13

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)....................................................................16

*United States v. Finnerty*,
    533 F.3d 143 (2d Cir. 2008)....................................................................13

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*United States v. Naftalin*,
    441 U.S. 768 (1979)................................................................................................................7

**Statutes**

15 U.S.C. § 77b(a)(3).................................................................................................................8

15 U.S.C. § 77q(a) ....................................................................................................................7

15 U.S.C. § 77q(a)(3).................................................................................................................6

15 U.S.C. § 78m(b)(2)(A).........................................................................................................22

15 U.S.C. § 78m(b)(2)(B)...................................................................................................23, 24

**Other Authorities**

S. Rep. No. 95-114 (1977).......................................................................................................22

SEC Release No. 33-6188, 45 F.R. 8960 (Feb. 11, 1980) .........................................................8

**Regulations**

17 C.F.R. § 240.12b-20...............................................................................................................7

17 C.F.R. § 241 ..................................................................................................................24, 25

Defendant Sequential Brands Group, Inc. ("Sequential Brands" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint ("Compl.") (Ex. 1) filed by the Securities and Exchange Commission ("SEC").

## PRELIMINARY STATEMENT

Sequential Brands is a publicly traded company with a track record of successfully maximizing the value of a diverse portfolio of consumer brands in the fashion, home, athletic, and lifestyle categories through licensing agreements with wholesalers and retailers. Ex. 2 at 4 (FY 2016 Form 10-K).[1] In Q4 2016, the vast majority of the Company's $1.4 billion in assets were its 18 brands, and "goodwill" comprised just $307.7 million or 21.4% of its total assets. *See id.* at 5-8, 17, 22. Between Q4 2016 through Q3 2017 (the "Relevant Period"), the Company experienced a persistent decline in consumer in-store purchasing, core brand performance, and its stock price. The Company's internal team of highly competent accounting and finance professionals, with the guidance of a nationally recognized financial advisory firm specializing in valuation, tested for impairment annually and continually evaluated these developments, including at each quarter, to determine whether a change in circumstances or an event occurred that more likely than not caused the carrying value of goodwill to exceed its fair value (the applicable GAAP standard). Exercising their good faith and professional judgment based on complete and well-developed information, and with input from the external expert valuation firm, the Company's accounting and finance professionals, determined that the Company's goodwill first became impaired in Q4 2017 and wrote down the full value of its goodwill that same quarter. The Company's auditor—an

---

[1] Citations to the Complaint (Dkt. #1) are styled as "¶ [paragraph number]." Citations to "Ex.   " are to the exhibits attached to the Declaration of Mary Beth Maloney, submitted herewith; these include excerpted copies of all cited SEC filings. On this Motion, the Court may consider documents referenced in the Complaint and matters of which judicial notice may be taken, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), including public SEC filings, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). All submitted documents fall within these categories.

independent public accounting firm registered with the PCAOB—concurred with the Company's judgment that goodwill first became impaired in Q4 2017 and that goodwill was impaired in full in that quarter.

Then the SEC came along. The SEC undertook a scorched-earth approach to its investigation, issuing document subpoenas to the Company, the external expert valuation firm, and the independent auditor, and taking days and days of testimony from the Company's internal finance and accounting professionals, and even from professionals at the valuation firm and the independent auditor. Even after the SEC's probing of the issue and its professionals' judgment, Sequential Brands determined that no write-down in goodwill was appropriate during the Relevant Period, and continued to disagree with the SEC's assessment of the relevant standards. And the Company is not alone; its auditor continues to agree that Sequential Brands' financial statements are materially stated in accordance with GAAP and continues to stand behind its unqualified opinion on the Company's financial statements.

Now, behaving like a Monday morning quarterback, the SEC claims that Sequential Brands violated Section 17(a)(3) of the Securities Act of 1933 ("Securities Act") by negligently failing to take *a $100 million impairment in Q4 2016, even though it fully impaired its goodwill by $304.1 million just four quarters later*.[2]  Ex. 3 at F-34, F-35 (FY 2017 Form 10-K).  The SEC's entire case rests on the theory that the Company somehow schemed to deceive investors in the offer or sale of securities by not recording a portion of the goodwill impairment earlier than it ultimately did. The Complaint utterly fails to plead the requisite elements of its claim. The only offer or sale of securities that the SEC alleges occurred during the Relevant Period was the filing of a Form S-8

---

[2]  Sequential wrote down the full value of its goodwill in Q4 2017 solely in response to its own review of its accounting and finances, and long before the SEC commenced its investigation in September 2018.  Decl ¶ 2.

in connection with the issuance of stock options to employees and directors, which are a "benefit" to company employees and directors that courts do not recognize as a "sale." And the allegations of misconduct in the Complaint are, at best, negligent misrepresentations and omissions, which cannot form the basis of a scheme liability claim, and were not inherently deceptive in any event. Indeed, the Complaint repeatedly uses the word "unreasonable" when describing Sequential Brands' conduct. As will be seen, however, what the SEC deems "unreasonable" falls well short of meeting threshold pleading requirements for negligent fraud under Section 17(a)(3), and the various accounting, books and records, and internal control violations alleged pursuant to Section 13 of the Securities Exchange Act of 1934 ("Exchange Act"). This case is not even negligence-by-hindsight. It is not negligence from any vantage point. Sequential Brands took the appropriate impairment at the appropriate time based on the facts and judgment available to management.

The SEC's factual allegations are insufficient to state a claim for several reasons. Chiefly, the SEC treats impairment determinations as rote calculations driven entirely by stock price, when in fact they entail significant judgments based on available and evolving information. Indeed, ASC 350, the relevant GAAP provision regarding goodwill, does not prescribe how to weigh the various qualitative factors. The analysis requires significant judgment, and the overall "weight of evidence" of "all identified events and circumstances" must be considered in making a determination. Ex. 4 at 8 (ASC 350-20-35-3G). Without any allegation or indication of actual misconduct, the Company's judgments are entitled to significant deference and weight, precluding any claim that it overstated its goodwill or had inadequate internal controls.

Notably, the Complaint does *not* allege the Company or its executives (1) overrode the advice of its auditor or other experts; (2) withheld facts the auditors didn't otherwise have; or, most important, (3) harmed the investing public by engaging in any inherently bad acts—*e.g.*,

manipulative stock trades, sham transactions, or collusion to defraud investors.  In fact, the Company has never restated the relevant financial statements, nor have its independent auditors withdrawn their unqualified opinions or modified their conclusions on those statements.[3]  And the Complaint does not quibble with any accounting decision related to any of the 18 brands, much less acknowledge that the Company took a $36.5 million impairment on certain non-core brands during the Relevant Period, which is distinct from goodwill.  *See* Ex. 5 at 19 (Q3 2017 Form 10-Q).  In short, the SEC's investigation yielded no facts that would suggest Sequential Brands improperly avoided impairment of its goodwill.

There is also no allegation anyone was harmed by the Company's decision to impair its goodwill when it did.  In fact, after a minimal and temporary decline, the value of the stock *increased* in response to the Q4 2017 impairment of the full value of its goodwill.  This is not surprising.  The SEC offers no allegation that the value of the Company's core consumer brands (including guaranteed minimum royalties ("GMRs") received from those brands) was in question.  (Facts in the investigative record not cited by the SEC make that allegation impossible.)  Likewise, the SEC offers no allegation that goodwill—merely a residual calculation—was critical to profitability.  (Again, unpleaded facts in the investigative record show it was not.)  Whether goodwill was impaired by "***at least $100 million***" four quarters earlier, as the SEC suggests it should have been, or impaired by more than $300 million, as it was in Q4 2017, the SEC does not allege that goodwill carried any particular significance with investors.  The Company had total assets of approximately $1.1 billion—similar on a year-over-year basis to 2016, minus the goodwill write-off—and during the Relevant Period, its core metrics, revenue and Adjusted

---

[3]  The Court can also take judicial notice of these facts because had a restatement been required or had the auditors withdrawn their opinions, such actions would be reflected in the Company's public filings. *Kramer*, 937 F.2d at 774.  No such allegation has been made, and the Company's public filings reflect no such action.

EBITDA, improved year-over-year.  Ex. 6 (Q4 2017 Form 8-K); Ex. 3 at 25 (FY 2017 Form 10-K) (consolidated balance sheet).  The fact that Sequential met its Adjusted EBITDA projections for 2017, after it had lowered its guidance in 2016, demonstrates that relevant facts about the business had been disclosed to the public, and Sequential Brands' belief that the "fundamentals of the business," ¶ 137, were intact, was reasonable at the time.[4]

The SEC's allegations of wrongdoing rest almost entirely on mischaracterizing plainly benign facts, and ignoring exculpatory ones.  As one example, Sequential Brands' independent auditors, whose testimony and documents are conspicuously absent from the Complaint, played a key oversight role in the Company's financial reporting.  If this case proceeds—and it should not—the documents and sworn investigative testimony of the four witnesses from the Company's independent auditor will entirely undercut the SEC's allegation that the Company "with[held] information of likely impairment from [its] auditor[s]," ¶ 7; *see also id*. ¶¶ 13, 14, 17, 67, 69, 79, 136.  But to defeat the pleading, the Company need go no further than the face of the Complaint.

The stakes for the Company and its shareholders are far too high to allow this case to proceed on the SEC's unremarkable factual allegations.  As addressed below, the Complaint's Section 17(a)(3) negligent fraud claims should be dismissed for failure to plead (1) any legally cognizable "offer or sale" of securities under Section 17(a)(3) by only alleging the filing of a Form S-8 in connection with the issuance of stock options to employees and directors, which courts do not recognize as a "sale;" and (2) scheme liability based on any "deceptive acts" distinct from alleged misrepresentations or omissions.  The Complaint's Section 13(a) and 13(b) claims also fail as a matter of law because there are no allegations that statements in Sequential Brands' public

---

[4]  The Company's 2017 full-year Adjusted EBITDA of $98.4 million fell within the range of its twelve-month guidance of $98 million to $102 million disclosed in Q4 2016 and exceeded its 2016 Adjusted EBITDA of $83.1 million.  Ex. 6 (Q4 2017 Form 8-K); Ex. 7 (Q4 2016 Form 8-K).

filings were "materially false," because disclosure requirements were met, and because there was never a material weakness in the internal controls over financial reporting found by either the Company or its auditors during the Relevant Period. There was never a need to restate the Company's prior financial statements, and management handled its books and records "reasonably." As such, there cannot be a violation of either statutory provision. The Court should dismiss the entire Complaint with prejudice.

## LEGAL STANDARD

Under Rule 12(b)(6), while the Court accepts as true the Complaint's factual allegations, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted), and allegations "contradicted" by documents referenced in the Complaint "are insufficient to defeat a motion to dismiss," *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

## ARGUMENT

**I.   The Negligence-Based Fraud and False-Filing Claims (Counts 1 & 2) Fail to Plead Essential Elements.**

Negligence-based fraud under Section 17(a)(3) of the Securities Act requires allegations that the Company: (1) "in the offer or sale of any securities" during the Relevant Period; (2) "engage[d] in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a)(3). And a false-filing claim under Section 13(a) of the Exchange Act requires allegations that statements in Sequential Brands' public filings were "materially false." *SEC v. Stanard*, 2009 WL 196023, at *31 (S.D.N.Y. Jan. 27, 2009) (citing 17 C.F.R. § 240.12b-20). The Complaint fails to adequately plead all of these elements. Counts 1 and 2 must therefore be dismissed.

**A.      The Complaint Fails to Plead an "Offer or Sale of Any Securities."**

The Complaint fails to adequately plead that Sequential Brands was engaged in the "offer or sale of any securities" during the Relevant Period.  *See* 15 U.S.C. § 77q(a).  While the Supreme Court has instructed that the "offer or sale" requirement should be construed broadly so as to encompass fraud in any part of the selling process, the statute is only triggered where an offer or sale ***has actually occurred***.  *United States v. Naftalin*, 441 U.S. 768, 772-73 (1979) (determining that an offer or sale had occurred before considering whether defendant's fraud was "in" the offer or sale); *S.E.C. v. Brown*, 740 F. Supp. 2d 148, 164 (D.D.C. 2010) (dismissing Section 17(a) claim for failing to allege "that an offer or sale of securities ever occurred").  Typically, this element is satisfied by public companies engaging in public offerings of their securities, or by offering or selling securities to institutional investors through so-called private placements.  But the SEC makes no such allegation.  The SEC's sole allegation in support of an "offer and sale" of securities is Sequential Brands' stock issuances pursuant to its benefit plans, under which Sequential Brands does not ***sell*** stock, but rather grants shares to its employees, consultants, and directors to incentivize them to continue their employment at the Company.[5]  ¶¶ 23-24.  As discussed below, stock issuances pursuant to such benefit plans simply do not qualify as "sales" under the Securities Act and, therefore, cannot provide the jurisdictional basis for this phantom negligent fraud scheme. 15 U.S.C. § 77b(a)(3) (defining a "sale" as "every contract of sale or disposition of a security or interest in a security, ***for value***") (emphasis added).

---

[5]  The SEC alleges that an "offer and sale of securities" occurred in connection with the Company's filing of its Form S-8 registration statement in January 2017 relating to stock issued pursuant to Sequential Brands' benefit plan.  ¶ 23 (referencing Ex. 8 at 2 (Form S-8 Sqbg, Inc. (Jan. 1, 2017)) (registering common stock "which may be issued or sold pursuant to the Sequential Brands Group, Inc. 2013 Stock Incentive Compensation Plan (the '2013 Plan')")).  While the filing of a Form S-8 can qualify as an offer or sale of securities, *see, e.g.*, *Stanard*, 2009 WL 196023, at *27, no offer or sale has been found where the Form S-8 merely disclosed the Company's issuance of stocks in connection with a benefit plan, as alleged here, ¶ 24.

Indeed, securities issued pursuant to a benefit plan qualify as a "sale" under the Securities Act only if the benefit required "an ***investment decision*** that could be influenced by fraud or manipulation." *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 735 (5th Cir.), *cert. denied*, 140 S. Ct. 389 (2019) (emphasis added). In *Int'l Brotherhood of Teamsters v. Daniel*, the Supreme Court found an "investment decision" requires at least two elements: (1) an "investment of money," and (2) an "expectation of profits."[6] 439 U.S. 551, 558-63 (1979). This decision has been extended by lower courts and recognized by the SEC in its own internal guidance and no-action letters. Indeed, the SEC issued a release to "resolve the uncertainty" surrounding *Daniel's* application to "many types of employee benefit plans not covered by the decision." *Lampkin*, 925 F.3d at 734 (citing SEC Release No. 33-6188, 45 F.R. 8960 (Feb. 11, 1980) ("1980 Release") (Ex. 9). The SEC clarified that although "stock bonus plans" or "plans under which an employer awards shares of its own stock to covered employees at no direct cost to the employees" provide employees with stock, which is clearly a "security" under the Securities Act, "***there is no 'sale'*** in the [Securities] Act sense to employees, ***since such employees do not individually bargain to contribute cash*** or other tangible or definable consideration to such plans." Ex. 9 at 8968, 1980 Release at 8968 (emphases added); *see also Fraser v. Fiduciary Tr. Co., Int'l*, 2005 WL 6328596, at *4 (S.D.N.Y. June 23, 2005) ("[W]hen an employee does not give anything of value for stock other than the continuation of employment nor independently bargains for . . . stock, there is no 'purchase or sale' of securities." (quoting *In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d 539, 556 (D.N.J.

---

[6] In *Daniel*, the Supreme Court held that a participant in a pension plan could not bring an action against plan trustees because there was no "investment of money" in the plan. *Daniel*, 439 U.S. at 559. The participating employees "ma[de] no payment" in exchange for the interest in the plan, which the employees received as part of their compensation packages. *Id.* The employees had no "expectation of profits" because any so-called profit "would depend primarily on the employee's efforts to meet the vesting requirements, rather than the fund's investment success." *Id.* at 562.

1999)).  Subsequent SEC no-action letters applying the same reasoning confirm stock awarded to directors is also granted and not sold.  *See e.g.*, Ex. 10, Pacific Telesis Group Letter (June 30, 1992).

The SEC's allegation that Sequential Brands' issuance of securities under the 2013 Plan somehow qualifies as an "offer or sale" of securities, ¶¶ 23, 34, is inconsistent with the Commission's own guidance and no-action letters, as well as *Daniel*.  Indeed, the 2013 Plan that Sequential Brands filed with the SEC, *see e.g.*, Ex. 11 (Form S-8 Sqbg, Inc. (Aug. 2, 2013) (attaching 2013 Plan as Exhibit 10.1[7])), makes it explicitly clear that the employees, consultants, and directors granted securities during the Relevant Period did not make affirmative investment decisions to purchase the securities at issue.  *First*, the plan recipients were not required to make any "investment of money," *Daniel*, 439 U.S. at 559, nor "give up a particular consideration in return for a financial interest." *Childers v. Northwest Airlines, Inc*., 688 F. Supp. 1357, 1363 (D. Minn. 1988).[8]  Instead, the awards were an "insignificant part of [each] total and indivisible compensation package," *Daniel*, 439 U.S. at 560, and "not part of such [recipient's] normal or expected compensation or salary for any purpose."  Ex. 11 at 26 (2013 Plan); *see also GBJ Corp. v. Sequa Corp*., 804 F. Supp. 564, 568 (S.D.N.Y. 1992) ("The purported investment must be viewed within the context of the 'total and indivisible compensation package.'").  They were not bargained-for and the "decision to accept and retain employment [or provide services to Sequential Brands] likely had only an attenuated relationship to the investment."  *Lampkin*, 925 F.3d at 734; *see also In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d at 545 (finding that a company's option plan "was an incident of employment" even though "the plan stated that it was created to provide an incentive for employees to remain with [the company]").

---

[7]  Attached as Ex. 11, for ease of review.

[8]  *See e.g.*, Ex. 11; Decl. at ¶ 18(a) (quoting 2013 Plan provision stating that restricted stock awards may be granted without the requirement of a cash payment).

*Second*, the recipients could not have had an "expectation of profits" under the 2013 Plan. *Daniel*, 439 U.S. at 561-62. As the Supreme Court explained, there is no "expectations of profits" when any expected profit "depend[ed] primarily on the [recipient's] efforts to meet the vesting requirements." *Id.* at 562. The awards here had no value until the restriction or vesting period lapsed, at a date determined at the sole discretion of Sequential Brands, which was based, in part, on the recipient's "continuing service or employment with the Company or an Affiliate [and] the achievement of performance goals."[9] Until the vesting date passed, the awards could not be transferred,[10] would be forfeited if the recipient departed from the Company or discontinued their services,[11] and did not carry any tax consequences.[12] And, in fact, of all of the awards at issue, only a small portion of awards to two former Sequential Brands Vice Presidents—16,666 shares of the 3,500,000 shares registered by Sequential Brands as of January 1, 2017—ultimately vested during the Relevant Period. Because Sequential Brands' awards were not an "offer or sale" as required by the Securities Act, the negligent-based fraud claim must be dismissed.

### B.    The Complaint Fails to Plead Scheme Liability as a Matter of Law.

Sequential Brands' alleged "deceptive course of conduct," as purportedly executed by its in-house "accounting and finance personnel," ¶ 142, fails as a matter of the law to plead scheme liability, which must be established under Section 17 (a)(3).[13] *See SEC v. Kelly*, 817 F. Supp. 2d

---

[9]  *See e.g.,* Ex. 11; Decl. at ¶ 18(b) and (e) (quoting 2013 Plan provisions stating that the restriction and vesting period lapses based, in part, on a recipient's continuing service and performance).

[10]  *See e.g.*, Ex. 11; Decl. at ¶ 18(c) (quoting 2013 Plan provision stating that unvested shares cannot be transferred or disposed of until the end of the restriction period).

[11]  *See e.g.,* Ex. 11; Decl. at ¶ 18(d) and (e) (quoting 2013 Plan provisions stating that unvested shares would be forfeited if the recipient departs from the Company prior to the vesting date).

[12]  *See e.g.,* Ex. 11; Decl. at ¶ 18(f) (quoting 2013 Plan provision stating there are no taxes due until vesting).

[13]  Case law involving "scheme liability" claims under Rule 10b-5 is equally applicable here as courts routinely recognize that the elements of Section 17(a)(3) violations, except for scienter, are "[e]ssentially

340, 345 (S.D.N.Y. 2011) ("[S]ubsections (1) and (3) of Section 17(a) apply to scheme liability."). It is well settled that "alleged misrepresentations or omissions," without more, cannot form the "sole basis" for scheme liability.  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005); *see also SEC v. Stoker*, 865 F. Supp. 2d 457, 467 (S.D.N.Y. 2012) (scheme liability requires "'a deceptive scheme . . . beyond the misrepresentations'" (citation omitted)).  Without this limit, virtually any claim for misrepresentations or omissions liability would state a claim for scheme liability.  To avoid that result, "courts have routinely rejected the SEC's attempt[s] to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'"  *Kelly*, 817 F. Supp. 2d at 343-44 (citing cases and dismissing scheme liability claim "premised on a misrepresentation").  The SEC's attempt to bypass the necessities of "scheme" pleading should be rejected here too.

The Complaint's scheme liability allegations make plain that its "deception" theory turns on nothing more than bare allegations of misrepresentations and omissions, which are not inherently deceptive.  *See* ¶¶ 7, 142 ("failure to reasonably carry out Sequential's impairment testing in accordance with GAAP" by "[in]adequately incorporat[ing] all events and changes in circumstances," "fail[ing] to conduct interim goodwill impairment testing," "creating . . . a misleading memorandum documenting a qualitative goodwill impairment assessment," and "unreasonably ignoring the December 2016 fair value determinations showing that goodwill was more likely than not impaired"); ¶ 7 ("withholding of evidence of likely impairment from the auditor," which resulted in "false and misleading disclosures in Sequential Brands' quarterly and annual reports on Forms 10-Q and 10-K concerning the Company's goodwill impairment testing").

---

the same" as those under Rule 10b-5.  *SEC v. Monarch Funding Corp*., 192 F.3d 295, 308 (2d Cir. 1999); *see also Kelly*, 817 F. Supp. 2d at 346 ("[C]laims under subsections (1) and (3) of Section 17(a) are treated the same as claims under subsections (a) and (c) of Rule 10b–5.").

Given the SEC's far-ranging investigation, any allegation of inherently bad acts is markedly absent—*e.g.,* manipulative stock trades, sham entities, or collusion to defraud investors.  *See*, *e.g.*, *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010) (listing examples).

Indeed, after reviewing nearly every document of "senior accounting and finance personnel," and interviewing them for nearly a dozen days, as well as collecting documents from the Company's outside auditors and interviewing audit personnel for another half dozen days, the SEC is left with threadbare allegations purportedly supporting a "deceptive course of conduct" that amounts to nothing more than second-guessing the good faith judgment calls of these accounting and finance professionals.  There are no allegations "which demonstrate [an] 'illegitimate, sham, or inherently deceptive transaction where [the Company's] conduct or role ha[d] the purpose and effect of creating a false appearance.'"  *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1205 (D.N.M. 2013).  In essence, there is nothing—no fake transaction, no insider dealing—independent of the alleged misrepresentation itself, and without that something more the SEC has not made out the elements of scheme liability.  Rather, according to the SEC, the "primary purpose and effect of [the] purported scheme [was] to make a public misrepresentation" of Sequential Brands' fair value.  *Kelly*, 817 F. Supp. 2d at 343-44 (rejecting scheme liability based on "the inflation of advertising . . . in [] SEC filings" because the conduct "*became* deceptive only through [such] misstatements in [the defendant's] public filings"); *see also In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 251 (S.D.N.Y. 2018) (finding the "alleged inflated valuation of the transaction [which] sent a false signal to the market about the value of [the defendant's] stock" was merely a misstatement).  But, "misrepresentations or omissions in [] public filings [are not] a proper basis for a scheme liability claim."  *Menaldi*, 277 F. Supp. 3d at 519; *see also SEC v. Rio Tinto plc*, 2019 WL 1244933, at *16 (S.D.N.Y. Mar. 18, 2019) (rejecting alleged "false statements

to shareholders" as the basis for scheme liability); *Goldstone*, 952 F. Supp. 2d at 1236 (holding an alleged fraudulent Form 10-K was not distinct from alleged misrepresentations and omissions).

Nor are the professionals' purportedly "unreasonable" impairment testing, ¶ 142, or an internal memorandum, which allegedly withheld information from auditors, ¶ 77, the sort of distinct, inherently deceptive acts courts require to allege scheme liability.[14]  *See e.g.*, *Menaldi v. Och–Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 519 (S.D.N.Y. 2017) (finding the "failure to disclose or accrue a loss contingency" was not deceptive); *Goldstone*, 952 F. Supp. 2d at 1236 (finding withholding evidence from auditors was not distinct from alleged omissions).  In fact, at least according to the SEC, the unreasonable test and inadequate memoranda are in service, not independent, of the alleged misstatement.  ¶¶ 77, 79.  Moreover, the SEC fails to allege why the memorandum was misleading; the SEC simply disagreed with the analysis.  While the SEC would have preferred a more robust impairment memorandum, that is not fraud of any stripe, including negligent fraud.  The SEC fails to plead scheme liability, and its negligence-based fraud claim must be dismissed.

## C.    The Complaint Fails to Prove Falsity as a Matter of Law.

The Complaint's alleged misstatements and omissions about the value of Sequential Brands' goodwill and its "goodwill impairment testing policies, procedures, and practices," ¶ 7; *see also* ¶¶ 86, 88-124, fail to plead falsity as a matter of law.  Goodwill impairment determinations

---

[14]  The alleged acts related to the Company's 2016 tests cannot support scheme liability because they "were not disclosed to the investing public."  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 149 (2008).  Setting aside the veracity of its allegation that information was withheld from the Company's auditors, the SEC relies on alleged omissions to "auditors . . . not relayed to the investing public," *Goldstone*, 952 F. Supp. 2d at 1235, and internal goodwill impairment testing, including the creation of an allegedly misleading internal memorandum.  "But deception, at a minimum, has to involve an act that gives the victims a false impression."  *SEC v. Lucent Techs., Inc*., 610 F. Supp. 342, 360 (D.N.J. 2009) (citing *United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008)).  Because "the investing public ha[d] no knowledge that [Sequential Brands] committed [such alleged] act[s] . . . no false impression was created."  *Id*.

are statements of opinion, not "matters of objective fact." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011). Whether goodwill is impaired is a qualitative assessment that "may be challenging[,] will require the use of significant judgment," and may result in a "range of prices with reasonable claims to being fair market value." *Id.* at 110-11. As a result, statements about Sequential Brands' goodwill value could only support a Section 13(a) clam as statements of opinion, which are actionable in only three limited circumstances: (1) if "the speaker did not hold the belief she professed," (2) if "the supporting fact she supplied were untrue," or (3) if the speaker omits information whose omission makes the statement misleading to a reasonable investor. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). The SEC does not plead the first and second circumstances, and it is "no small task" to plead the third. *Id.* at 1332. Because reasonable investors "do[] not expect that every fact known to an issuer supports its opinion statement," a court must examine the statement "in light of all its surrounding text," and determine if there is a reasonable basis for the statement such that it "fairly aligns with the information in the issuer's possession at the time." *Id.* at 1329-30.

**Q4 2016 Alleged Reporting Violations.** The SEC alleges that the Company (1) failed to disclose that it had conducted objective market capitalization analyses in Q4, the "December 2016 fair value determinations," and (2) omitted that "market capitalization calculation" from its qualitative assessment while it "had in its possession facts and information tending to show its statement that goodwill was not impaired was wrong." ¶ 96. As a result, the SEC alleges that Sequential Brands falsely disclosed that its goodwill was not impaired and made material misstatements to its financial results. ¶¶ 88-93, 97. These allegations do not establish a misleading statement or omission that would be material to investors, and are not adequate to support a claim that Sequential Brands' goodwill value was, in fact, overstated in Q4 2016.

*First*, the Company disclosed that it may conduct a qualitative assessment, listing examples of the multiple assessment factors (derived from ASC 350).  Ex. 2 at F-11 (FY 2016 Form 10-K). Consistent with ASC 350, Sequential considered the stock price and the resulting market capitalization as one of the factors in its qualitative analysis; it was not used as an independent fair value test.  Ex. 4 at 6-7 (ASC 350-20-35-3C).

*Second*, there is no allegation that the Company's qualitative analysis failed to expressly consider and document the stock price decline.  ¶¶ 75-76.  There is also no allegation that the Company failed to share the analysis assessing potential impairment factors with its independent auditors, only that it shared the memo in February, instead of December.  ¶ 78.  It is striking that there is also no allegation of the independent auditors' response to the memo.  ¶ 79.  There is no allegation that the independent auditors questioned the analysis, much less any allegation that the independent auditors found the analysis or the conclusion reached lacked a reasonable basis.  *Id.* The stock price decline was the critical factor, not the market capitalization calculation itself, as the SEC alleges.  This is because the market capitalization analysis was driven by the value of the stock price and based on facts known to the public and the independent auditors.  It was in no way a formal impairment test.[15]  The SEC alleges nothing to the contrary.  *See, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (finding that where Plaintiff failed to identify the "negative factors and assumptions Defendants *already incorporated* into their goodwill valuation," Plaintiff "cannot demonstrate that Defendants

---

[15]  The SEC's insinuation that the so-called "market capitalization analyses" was a complex formula that the market could not or did not know at the time is wrong.  If this case proceeds, the record will reveal that this was nothing more than back-of-the-envelope calculations taking that day's stock price and multiplying it by the shares outstanding to develop a market cap "floor," absent a control premium—a 30-second calculation requiring only elementary school math.  No one was fooled, nor should this Court be.

were aware of **additional** 'facts and circumstances' that would have indicated [impairment].")
(emphases added).

*Third*, the presence of other potentially (and in this case immaterial) negative factors,
namely that some non-core brands had declining sales or higher costs, ¶ 76, is not a material
omission because there is no liability when "an issuer fail[s] to disclose information that r[uns]
counter to" another opinion. *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016).[16]

**Q1 and Q2 2017 Alleged Reporting Violations.** The SEC alleges that in these quarters
"additional triggering events" demonstrated the Company's likely need for an impairment, ¶ 98,
but does not address whether these events were relevant to its goodwill impairment testing (*e.g.*,
brand "liquidation value" reports prepared for lenders, *id.* ¶ 98(c)), and ignores that some were
positive factors (*e.g.*, hiring of new CEO, *id.* ¶ 98(d)).  Other factors were, at best, "facts cutting
the other way" that Sequential Brands was not required to disclose under *Omnicare* (*e.g.*, revised
earnings guidance and stock price decline, both of which of course were publicly known, *id.* ¶ 98(c-
d)).  *Omnicare,* 135 S. Ct. at 1329.  Regardless, none of these factors are dispositive under GAAP
and, as such, their omission is immaterial.  *City of Dearborn Heights*, 856 F.3d at 617 (under ASC
350 "none of the individual examples of events" suggesting potential goodwill impairment are
"intended to represent standalone events . . . that necessarily require an entity" to conduct an
interim test).

---

[16] Courts regularly dismiss claims of overstated assets even in egregious circumstances, which are not
present here.  *See, e.g.*, *City of Omaha Civilian Empls. Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir.
2012) (per curiam) (impairment testing not required under *Fait* despite company's "general financial
deterioration"); *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret.
Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774, at *3 (S.D.N.Y. Sept. 30, 2016) (asset not overstated
under *Omnicare*, even though subsidiary had "effectively ceased operations" and was "poorly performing
or defunct").

**Q3 2017 Alleged Reporting Violations**.   The SEC alleges that Sequential Brands failed to disclose factors regarding its goodwill testing methodology, including: (1) a significant difference in fair value between the discounted cash flow ("DCF") and market capitalization calculations; (2) the reconciliation between the DCF and market capitalization calculation was made up of two factors, only one of which was discussed in the goodwill disclosures; and, (3) the market capitalization calculation implied impairment.   ¶ 124.   The SEC's allegations demand too much. Every fact that might conceivably be of interest does not require disclosure.   *See Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013) (the securities laws "'do not create an affirmative duty to disclose any and all material information'").   There are always "likely to be additional details that could have been disclosed but were not."   *Brody v. Transt'l Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).   A statement is only actionable if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists."   *Id.* That was plainly not true here.

The Company disclosed conducting a "quantitative assessment [that] was determined under an income approach using estimates of discounted future cash flows (the 'DCF Method')." Ex. 5 at 18 (Q3 2017 Form 10-Q).   It further disclosed that it "corroborated the results of the DCF Method by reconciling to within a reasonable range of [the Company's] market capitalization," and relied on "[r]econciling items" which it "identified" as a reason why "the market capitalization may not be giving full value" to the Company.   *Id*. Not disclosing its market capitalization calculation was a non-event where the formula was disclosed and could be calculated by anyone using publicly available information.   Sequential Brands was not required to say more.   For at least these reasons, none of these statements are actionable.

### D.     The Alleged Misstatements and Omissions Were Immaterial as a Matter of Law.

The SEC has also failed to plead materiality as a matter of law.  Indeed, the SEC's conclusory assertion that some of the statements Sequential Brands made in its public filings qualified as material misstatements due to the "***importance*** placed by Sequential, analysts, and investors on meeting or beating earnings, as well as the ***importance*** of Sequential's intangible assets, including goodwill, to its appearance of financial health and ability to execute on its business plan," ¶¶ 91, 93, 103, 105, 111 (emphasis added), would render everything in a public company's SEC filings material, flying in the face of well-established case law.  Materiality is an "objective, totality-of-the-circumstances inquiry" that requires courts to consider "both quantitative and qualitative factors," *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc*., 873 F.3d 85, 146 (2d Cir. 2017) (internal citations omitted), as well as "fairness, probability, and common sense," *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 302 (S.D.N.Y. 2010).  Applied to the facts here, the alleged misstatements and omissions were "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000); *see also ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co*., 553 F.3d 187, 197 (2d Cir. 2009) ("*ECA*") (affirming dismissal of complaint for failure to, *inter alia*, plead materiality, which requires that the statement "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available").

As to the quantitative impact, the SEC alleges that if Sequential Brands had conducted a quantitative impairment test as of December 2016 it "would have shown an impairment of at least $100 million, a material amount."  ¶ 81.  The calculation Sequential Brands conducted as of December 31, 2016 reflected a difference of $96 million, or 6.7% percent of Sequential Brands'

$1.434 billion in total assets.  While this figure is not "presumptively immaterial" under SEC guidance, this factor alone is "not conclusive." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390-91 (2d Cir. 2015) ("*IBEW*") (dismissing claims, in part, for lack of materiality).  Courts "must also consider qualitative factors," *id*. at 390, and this Circuit specifically has "consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation." *Ganino*, 228 F.3d at 162.

*First*, even if goodwill was a "driving factor" in the Company's profitability and thus material to its financial reporting, which it was not, "this factor alone does not tip the scales in favor of finding the statements material." *IBEW*, 783 F.3d at 391. The allegation ignores that goodwill does not ever rise in value and that any impairment is a noncash charge, much like the depreciation charge for a capital asset.  Goodwill is counted for tax and financial statement purposes, but has no effect on the cash flow or liquidity of a company, which are more important focuses for investors.  In fact, the metric investors cared about was non-GAAP EBITDA which would not be impacted by an impairment.  While the Company placed some importance on its intangible assets, there is no allegation that it viewed its goodwill as reflective of its underlying brands' value.  Regardless, individual brand performance does not dictate whether the Company's goodwill value is impaired.  The SEC offers no allegation to the contrary, and does not challenge Sequential Brands' impairment testing relating to its individual brands, only that certain brands were "declining."  ¶ 91.

*Second*, as to the alleged "importance placed by Sequential Brands, analysts, and investors on meeting or beating earnings . . . [and] its appearance of financial health and ability to execute on its business plan," ¶¶ 91, 93, 103, 105, 111, there is no connection alleged between earnings, financial health, or ability to execute, and "goodwill."  There are no alleged misrepresentations

that involved even a hint of "concealment of an unlawful transaction," *IBEW*, 783 F.3d at 391, nor

that "hid[] a failure to meet analysts' consensus expectations for the enterprise," *Ganino,* 228 F.3d

at 163.  Tellingly, after obtaining hundreds of thousands of pages of documents from 12 custodians

and conducting 18 days of sworn witness interviews, the SEC offers no allegation based on any

testimony or document related to the "importance" anyone placed on "meeting or beating

earnings" or "execut[ing] on its business plans," let alone how "goodwill" figured into the

Company's plans or earnings expectations; after all, the SEC does not allege the Company

schemed to overstate EBITDA or revenue.  As the Complaint makes plain, there was no analyst

expectation of improved earnings to beat, or any expectation with regard to goodwill, specifically.

To the contrary, as the SEC alleges, the Company and analysts were projecting a "steady decline"

before and during the Relevant Period: "Throughout 2016 and 2017, Sequential Brands' industry

sector performed poorly. . . . Sequential's stock price steadily declined during this period," ¶ 47,

and "Sequential's projections of its future earnings and analysts' earnings estimates for Sequential

likewise dropped . . . Analysts' reports to investors also predicted steady decline in the 'price

targets' for Sequential's stock," ¶ 48.  Given this "steady decline" throughout 2016 and 2017, the

SEC must do more than assert generally that "meeting or beating earnings," was a motivating

factor in Sequential Brands' impairment decision.  Simply alleging that investors and management

would have liked to see more profits—true for any company—is insufficient for a claim to survive

a motion to dismiss.  In fact, Sequential lowered guidance on revenue and EBITDA, the metrics

investors cared about, which caused the stock price (and resulting market capitalization) decline

at the end of 2016.  It is absurd for the SEC to suggest that Sequential attempted to avoid an

impairment to prop up its stock price when, at the same time, Sequential actually divulged

information that investors cared about which materially impacted its stock price.

Had the absence of a $100 million impairment during the Relevant Period been material to "Sequential Brands, analysts, and investors," the Q4 2017 impairment charge of $304.1 million—three times the size the SEC alleges should have been taken earlier—would have led to a "significant [] negative market reaction." *ECA*, 553 F.3d 187 at 2015. While the fluctuation of the stock price is "not determinative" on its own, it may be "relevant" to whether a reasonable investor would view the information as significant. *Geiger v. Solomon-Page Grp.*, Ltd., 933 F. Supp. 1180, 1188 (S.D.N.Y. 1996). It is notable that the SEC offers no proof of the "importance" of that impairment, such as an allegation that analysts downgraded the Company in response to the Company's Q4 2017 impairment. Instead, the market responded in Q4 2017 by causing the stock to rise 11.3% over a seven-day closing average before and after the earnings announcement on February 28, 2018. *See* Ex. 6 (Q4 2017 Form 8-K); Ex. 12 (Stock Price Chart).[17] While the stock price declined by 13% the day the earnings release was announced, the SEC has not alleged that the Company "expect[ed]" the goodwill impairment would cause the stock to drop. *ECA*, 553 F.3d at 205. To the contrary, the stock price steadily increased in the following days, demonstrating that the impairment announcement was not material. *Cf. ECA*, 553 F.3d at 203, 205 (declining to find misstatements material where stock price immediately fell by nearly 19%). Thus, just as the market had no adverse response to the Company's Q4 2017 goodwill write-down, its earlier decision not to write-down goodwill would have also been immaterial to a reasonable investor.

Because none of these factors support materiality, the SEC declined to bring a case based on "misstatement liability" and has instead attempted to create an apparent "scheme" based entirely on these alleged misstatements and omissions. This improper attempt, which also appears

---

[17] *See Ganino*, 228 F.3d at 166 n.8 (district court may take judicial notice of stock prices without converting a motion to dismiss into a motion for summary judgment).

to be unprecedented as we have been unable to identify any cases in this Circuit in which the SEC has brought a 17(a)(3) claim alone, has utterly failed.  Counts 1 and 2 must be dismissed.

## II.     The Accounting & Internal Controls Claims (Counts 3 & 4) Fail as a Matter of Law.

The touchstone for liability of Section 13(b)(2) is "reasonableness" because "management must exercise judgment" and "necessarily estimate and evaluate the cost/benefit relationships of the steps to be taken in fulfillment of its responsibilities."  S. Rep. No. 95-114, at 8 (1977); *see also SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 866 (S.D.N.Y. 1997).  Given the scope of its investigation, the SEC's accounting and internal controls claims are remarkable for what they do not and cannot allege—*e.g.*, no restatement was required and the auditors never withdrew their opinion nor took issue with the Company's internal controls, even in the face of the SEC investigation.  While the SEC's accountants may have handled the Company's accounts and books and records differently, stock price movement alone does not dictate a Company's impairment analysis and *post hoc* judgments of what a company might have done cannot sustain a Complaint.

### A.     The Complaint Does Not Adequately Allege an Accounting Violation

Section 13(b)(2)(A), requires an issuer to "make and keep books, records, and accounts, which . . . accurately and fairly reflect" the Company's assets.  15 U.S.C. § 78m(b)(2)(A).  The SEC cannot claim a Section 13(b)(2)(A) violation "absent proof of a violation of [applicable accounting standards]."  *See e.g.*, *SEC v. Coffman*, 2007 WL 2412808, at *15 (D. Colo. Aug. 21, 2007).  Without any allegation that a restatement was required or "***objective facts*** that Defendants' accounting methods violated" applicable accounting standards, the SEC's accounting violations claims fail. *See Harris v. Amtrust Fin. Servs.*, 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015) (emphasis added).  The only objective fact is that the Company's independent auditors, in full knowledge of the SEC's allegation, have not backed away from their finding that the Company's impairment analyses, controls, and books and records were appropriate and without material weakness.

22

Even read in the light most favorable to the SEC, the Complaint's allegations cannot establish that Sequential Brands' books and records were inaccurately stated. The SEC asserts the Company (a) errored at YE 2016 in its goodwill determination; (b) carried forward that error for the next three quarters; and (c) failed to accurately evaluate additional events that should have alerted it to a need to impair its goodwill. ¶ 84, 98. These allegations ignore the Company's efforts to comply with all accounting guidelines at the time.[18] Likewise, the Company continued to evaluate its goodwill through the first three quarters of 2017, completing multiple analyses, monitoring its stock price, and evaluating additional qualitative factors. The hallmark of Section 13(b)(2)(A) "liability is predicated on standards of reasonableness," not absolutes. *Softpoint*, 958 F. Supp. at 866. While the SEC disagrees with the ultimate outcome (failing to impair the Company's goodwill several quarters earlier), the SEC fails to sufficiently allege that under these facts the Company acted unreasonably.

**B.  The Complaint Does Not Sufficiently Allege an Absence of Requisite Internal Controls Over Financial Reporting.**

The Section 13(b)(2)(B) claim, which requires an issuer to "devise and maintain a system of internal accounting controls sufficient to provide ***reasonable assurances***," 15 U.S.C. § 78m(b)(2)(B) (emphasis added), also must be dismissed.

**The Company Acted Reasonably in Monitoring For Impairment.**  The Complaint acknowledges the Company's detailed system of internal controls, mandating annual, "or as triggering events" required, impairment testing of its goodwill. ¶ 128. The SEC then dismisses the controls as deficient because they lacked "contemporaneous documentation" that would prove

---

[18] The Company completed a qualitative evaluation in Q4 2016 pursuant to ASC 350, which does not define a "sustained" stock price drop decline, nor prescribe how to weigh the various qualitative factors. Indeed, this analysis requires significant judgment and weighing of numerous factors. Based on its qualitative assessment, a quantitative fair value test was not required.

anyone was "monitoring indicators of impairments," or "triggering events," between periods. ¶ 133.  The standard is "reasonableness" and neither case law nor controlling accounting guidance recognize or require any specific "contemporaneous documentation."  *See generally SEC v. World-Wide Coin,* 567 F. Supp. 724, 751 (N.D. Ga. 1983); *see also* 17 C.F.R. § 241, Rel. No. 55929 (June 20, 2007) ("[M]anagement should have considerable flexibility as to the nature and extent of documentation it maintains to support its assessment" of internal controls.)

Though certain allegations suggest otherwise, *see* ¶ 135, the SEC acknowledges that the Company documented assessments in emails, including their conclusion that no new events and circumstances from Q4 2016 required an interim impairment test.  *Compare* ¶¶ 69-75 with ¶¶ 98-113 (describing documents and emails prepared by company executives, but later alleging that no such evaluation documentation exists).  SEC guidance confirms this approach, acknowledging that "in smaller companies, where management's daily interaction with its controls provides the basis for its assessment, management may have limited documentation created specifically for the evaluation of ICFR."  17 C.F.R. § 241, SEC Rel. No. 55929 (June 20, 2007).

**The Company Maintained Accurate Records**.  Nothing in ASC 350 requires a detailed analysis between impairment tests, simply that the evaluation is completed, and failing to require preparation of a formal memo is not an internal control failure.  Internal controls need only provide "reasonable assurances" of accurate records, 15 U.S.C. § 78m(b)(2)(B), not airtight guarantees that can withstand intentional circumvention. *See World-Wide Coin*, 567 F. Supp. at 751 (neither the SEC nor Congress "intended that the statute should require that each affected issuer install a fail-safe accounting control system").  The SEC's own interpretative guidance for management regarding evaluation of internal controls acknowledges, "[i]f management determines that the evidential matter within the Company's books and records is sufficient to provide reasonable

support for its assessment, it may determine that it is not necessary to separately maintain copies of the evidence it evaluates. . . ." 17 C.F.R. § 241, SEC Rel. No. 55929 (June 20, 2007).

Complaining that the Company carried "errors forward into the first three quarters of 2017," ¶ 84, and that its analysis in Q1 2017 through Q3 2017 was not as thorough or well documented as the interim analysis for the fourth quarter of 2016, ¶¶ 133-137, the SEC fails to allege facts that would support that such "errors" were improperly carried forward. The Complaint fails to point to any accounting literature or guidance mandating the type of controls the Company *should have* implemented, and instead recounts the elements of Section 13(b)(2)(B) with virtually no factual allegations to sufficiently allege that sufficient controls were not implemented. For example, the SEC does not allege (1) that the finance and management team failed to discuss or address in writing their assessment of potential impairment indicators under ASC 350.99; (2) that the Company's independent auditors were not consulted about the Company's conclusions regarding impairment indicators; or (3) that its independent auditors found these conclusions unreasonable or sought further documentation from the Company prior to concluding their quarterly reviews. Accordingly, this claim should be dismissed. *See*, *e.g.*, *SEC v. Bankatlantic Bancorp, Inc.*, 2012 WL 1936112, at *24 (S.D. Fla. May 29, 2012) (dismissing Section 13(b)(2)(B) claim where there were not "sufficient allegations relating to the types of internal accounting controls contemplated by § 13(b)(2)(B)").

## CONCLUSION

The SEC's investigation concerning the timing and amount of the impairment Sequential Brands took, left no part of its decision-making unexamined. Should the Court find it has failed to allege actionable claims, the SEC should not be given a free pass to amend its pleading.

Dated: New York, New York
        February 25, 2021

Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

By:    /s/ Mary Beth Maloney

Mark A. Kirsch
Mary Beth Maloney
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
E-mail: mkirsch@gibsondunn.com
E-mail: mmaloney@gibsondunn.com

Monica K. Loseman (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1801 California St.
Denver, Colorado 80202
Telephone: (303) 298-5700

*Counsel for Defendant Sequential Brands
Group, Inc.*