**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| | **Civil Action No. 20-CV-10471 (JPO)** |
| **v.** | |
| | **ECF CASE** |
| **SEQUENTIAL BRANDS GROUP, INC.** | |
| **Defendant.** | |

**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM**
**OF LAW IN OPPOSITION TO SEQUENTIAL BRANDS GROUP, INC.'S**
**MOTION TO DISMISS THE COMPLAINT**

April 26, 2021

Sarah Heaton Concannon
Christopher M. Bruckmann
Division of Enforcement
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT……………………………………………………..…1

SUMMARY OF ALLEGATIONS……………………………………………………..2

STANDARD OF REVIEW………………………………………………….…4

ARGUMENT…………………………………………………………...…4

I.   THE COMPLAINT STATES A CLAIM FOR NEGLIGENCE-BASED FRAUD AND DISCLOSURE VIOLATIONS (COUNTS I & II)…………………………………....…4

   A.  Sequential's Fraud Occurred "In the Offer or Sale" of Securities……………......…5

   B.  The SEC Has Pleaded Transactions, Practices, and Courses of Business by Sequential That Operated as a Fraud and Deceit………………………..……… ….9

      1.  Sequential's Unreasonable and Deceptive Transactions, Practices, and Courses of Business……………………………………………...……10

      2.  In *Lorenzo*, the Supreme Court Overturned Any Requirement for "Deceptive Conduct" Apart From Misstatements……..……………….....11

   C.  The SEC Has Pleaded Falsity………………………………………….……15

      1.  Sequential's Deceptive Conduct and Materially False and Misleading Statements and Omissions Are Not Matters of Opinion………..…...…....15

      2.  Even if Goodwill Impairment Is a Matter of Opinion, *Omnicare* Does Not Preclude This Action……………………………….…………...…….17

   D.  The SEC Has Pleaded Materiality……………………………………….…22

      1.  Sequential's $100 Million Fraud Materially Impacted Numerous Key Financial Metrics………………………………………………....22

      2.  A Reasonable Investor Would Want to Know About Sequential's $100 Million Fraud………………………………………………….…24

      3.  Sequential's Stock Price Movement Arguments Are Unavailing………...25

II.    THE COMPLAINT STATES A CLAIM FOR BOOKS AND RECORDS AND INTERNAL ACCOUNTING CONTROLS VIOLATIONS (COUNTS III & IV) ……………………………………………………………...26

      A.  Sequential's Books and Records Violation Is Well-Pleaded……………….…26

      B.  Sequential's Internal Accounting Controls Violation Is Well-Pleaded………..…27

CONCLUSION……………………………………………………………………….…30

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. SEC,*
    446 U.S. 680 (1980).................................................................................. 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................. 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................. 4

*Berko v. SEC,*
    316 F.2d 137 (2d Cir. 1963)...................................................................... 8

*BP p.l.c. Sec. Litig.,*
    MDL No. 4:10-MD-2185, 2016 WL 3090779 (S.D. Tex. May 31, 2016) .............................. 20

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
    856 F.3d 605 (9th Cir. 2017) .................................................................... 16

*City of Omaha, Nebr., Civilian Emps. Ret. Sys. v. CBS Corp.,*
    679 F.3d 64 (2d Cir. 2012)........................................................................ 19

*ECA & Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir. 2009)................................................................. 22, 23

*Fait v. Regions Fin. Corp.,*
    655 F.3d 105 (2d Cir. 2011)...................................................................... 16

*Ganino v. Citizens Utils. Co.,*
    228 F.3d 154 (2d Cir. 2000)................................................................. 22, 24

*Harris v. Amtrust Fin. Servs.,*
    135 F. Supp. 3d 155 (S.D.N.Y. 2015).......................................................... 26

*Hughes v. SEC,*
    174 F.2d 969 (D.C. Cir. 1949).................................................................... 8

*Hutchison v. Deutsche Bank Sec. Inc.,*
    647 F.3d 479 (2d Cir. 2011)...................................................................... 24

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v.*
*Royal Bank of Scotland Grp., PLC,*
    783 F.3d 383 (2d Cir. 2015)...................................................................... 22

*Int'l Bhd. of Teamsters v. Daniel,*
    439 U.S. 551 (1979).................................................................................. 8

**Cases (*cont.*)**

*Lampkin v. UBS Fin. Servs., Inc.*,
  925 F.3d 727 (5th Cir. 2019) ................................................................. 8

*Lehman Bros. Sec. & ERISA Litig.*,
  131 F. Supp. 3d 241 (S.D.N.Y. 2015)..................................................... 20

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2011).................................................................... 24

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
  CV: 10-2847, 2011 WL 12855820 (N.D. Ala. June 7, 2011)............................. 17, 20

*Lorenzo v. SEC*,
  ___ U.S. ___, 139 S. Ct. 1094 (2019)................................................. 9, 11, 12, 13, 14

*Malouf v. SEC*,
  933 F.3d 1248 (10th Cir. 2019) ............................................................. 12, 13, 14

*Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)................................................................... 22

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*,
  No. 15 Civ. 6034 (RJS), 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)................... 16

*N. Sims Organ & Co. v. SEC*,
  293 F.2d 78 (2d Cir. 1961)...................................................................... 8

*Omnicare, Inc. v. Laborers Distr. Council Constr. Indus.*,
  575 U.S. 175 (2015)................................................................. 15, 16-17, 18, 20

*SEC v. Adelphia Commc'ns Corp.*,
  02 Civ. 5776(PKC), 2006 WL 8406833 (S.D.N.Y. Nov. 16, 2006)...................... 29

*SEC v. Czarnik*,
  No. 10 Civ. 745, 2010 WL 4860678 (S.D.N.Y. Nov. 29, 2010) ....................... 5, 8

*SEC v. e-Smart Tech.*,
  82 F. Supp. 3d 97 (D.D.C. 2015) ........................................................ 29

*SEC v. Fiore*,
  416 F. Supp. 3d 306 (S.D.N.Y. 2019)....................................................... 13

*SEC v. First Jersey Sec. Corp.*,
  101 F.3d. 1450 (2d. Cir 1996)................................................................. 5-6

**Cases (*cont.*)**

*SEC v. Im*,
  No. 17-CV-3613, 2018 WL 840094 (S.D.N.Y. Feb. 12, 2018) ................................................ 22

*SEC v. Isaza Tuzman*,
  No. 15-cv-7057, 2017 WL 11606728 (S.D.N.Y. Sep. 29, 2017) ............................................ 24

*SEC v. ITT Educ. Servs., Inc.*,
  303 F. Supp. 3d 746 (S.D. Ind. 2018) ........................................................................... 6-7, 9

*SEC v. Kelly*,
  817 F. Supp. 2d 340 (S.D.N.Y. 2011) ............................................................................ 12, 14

*SEC v. McNulty*,
  137 F.3d 732 (2d Cir. 1998) .............................................................................................. 26

*SEC v. Mudd*,
  885 F. Supp. 2d 654 (S.D.N.Y. 2012) .................................................................................. 25

*SEC v. Rio Tinto PLC*,
  17 Civ. 7994, 2021 WL 818745 (S.D.N.Y. Mar. 3, 2021) ...................................................... 14

*SEC v. RPM Int'l, Inc.*,
  282 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................ 24, 27, 29-30

*SEC v. SeeThruEquity, LLC*,
  18 Civ. 10374, 2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) ............................................ 12, 13

*SEC v. Softpoint*,
  958 F. Supp. 846 (S.D.N.Y. 1997) ...................................................................................... 9

*SEC v. Stanard*,
  No. 06 Civ. 7736, 2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) .................................... 9, 26, 28

*SEC v. Sugarman*,
  19-CV-5998, 2020 WL 5819848 (S.D.N.Y. Sept. 30, 2020) .................................................. 13

*SEC v. Universal Express, Inc.*,
  475 F. Supp. 2d 412 (S.D.N.Y. 2007) ................................................................................... 6

*SEC v. Ustian*,
  No. 16C-3885, 2017 WL 365572 (N.D. Ill. Jan. 24, 2017) .................................................... 21

*SEC v. Winemaster*,
  19-CV-04843, 2021 WL 1172773 (N.D. Ill. Mar. 29, 2021) ................................................. 13

**Cases (*cont.*)**

*SEC v. Yin*,
   17-cv-00972 (JPO), 2018 WL 1582649 (S.D.N.Y. Mar. 26, 2018) ........................................... 4

*Set Capital LLC v. Credit Suisse Grp. AG*,
   No. 18-CV-2268, 2019 WL 3940641 (S.D.N.Y. Aug. 16, 2019)............................................ 13

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)........................................................................................17-18

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)..................................................................................... 22, 25

*Unites States v. Jensen*,
   608 F.2d 1349 (10th Cir. 1979) ..................................................................................... 5

*United States v. Naftalin*,
   441 U.S. 768 (1979)......................................................................................................... 5

*Yoder v. Orthomolecular Nutrition Inst., Inc.*,
   751 F.2d 555 (2d Cir. 1985)........................................................................................... 5

*Zwick Partners, LP v. Quorum Health Corp.*,
   No. 3:16-cv-2475, 2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) ........................... 17, 19-20

**Statutes**

15 U.S.C. § 77b(a)(3)...................................................................................................... 5

15 U.S.C. § 77q(a)(3)...................................................................................................... 10

15 U.S.C. § 78m(b)(2)(A)................................................................................................ 26

15 U.S.C. § 78m(b)(2)(B)................................................................................................ 28

**Regulations**

17 C.F.R. § 210.4-01…………………………………………………………….………17

**Other Materials**

Concept Release on Compensatory Securities Offerings and Sales,
   S.E.C. Release No. 10521, 2018 WL 10424932 (July 18, 2018) ............................... 7

Employee Benefit Plans,
   S.E.C. Release No. 6188, 1980 WL 29482 (February 1, 1980)................................. 7

**Other Materials (*cont.*)**

SEC Staff Accounting Bulletin No. 99,
   64 Fed. Reg. 45150 (1999) ................................................................................................. 22-23

SEC's Motion for Interlocutory Appeal,
   *SEC v. Rio Tinto PLC*, 17 Civ. 7994 (AT) [ECF #218]………………………………………14

## PRELIMINARY STATEMENT

Sequential Brands Group, Inc. hid from the public for over a year that one of its most significant assets—goodwill—was hemorrhaging value.  Sequential[1] engaged in accounting machinations and deceptive practices to conceal its goodwill impairment from the investing public. Sequential's stock price began declining in 2015, and continued declining through 2016, as the retail sector in which Sequential operates struggled.  Sequential carried out mandatory annual goodwill impairment testing as of October 2016, finding that there was no impairment to the over $300 million in goodwill assets that it carried.  But then Sequential conducted two additional tests as of December 2016.  These tests showed goodwill was likely impaired by *at least $96 million*.

Instead of immediately quantifying its impairment write down and disclosing its true financial picture to the investing public, Sequential undertook a strained, biased, and outcome-driven qualitative analysis, in a misguided attempt to un-ring the bell.  This analysis conveniently left out *any* consideration of the objective evidence of impairment provided by the December 2016 tests, and unreasonably concluded that goodwill was not impaired.  A year later, in the fourth quarter of 2017, Sequential belatedly wrote off *all* of its goodwill—wiping out *one-fifth* of its total assets.

Sequential now accuses the SEC of "behaving like a Monday morning quarterback."  Def. Mem. at 2.  Not so.  This case is not about the hindsight application of subjective accounting judgment.  The SEC's Complaint rests on the tests that Sequential itself performed *at the time*,

---

[1]  As used herein, "Sequential" refers to defendant Sequential Brands Group, Inc.  "Compl." refers to the Complaint filed by the SEC in this matter on December 11, 2020 [ECF #1].  "Def. Mem." refers to Sequential's Memorandum of Law in Support of its Motion to Dismiss the Complaint, filed on February 25, 2021 [ECF #12].  Citations to "Ex." are to the Declaration of Sarah Heaton Concannon in Support of Securities and Exchange Commission's Opposition to Sequential Brands Group, Inc.'s Motion to Dismiss the Complaint, submitted herewith.

and the deceptive course of conduct that Sequential undertook to hide its impairment from its investors, its auditor, and the SEC.

Despite its year-long accounting fraud, Sequential now asks this Court—on a motion to dismiss in which the pleaded facts must be construed in favor of the SEC—to find that the Complaint's allegations are insufficient. Sequential is wrong. The Complaint states each of the SEC's claims with the requisite particularity, and alleges that Sequential's fraud occurred at the same time as Sequential registered 3.5 million shares of stock for offer and sale. This Court should deny Sequential's motion to dismiss.

## SUMMARY OF ALLEGATIONS

Sequential is a brand management company based in New York and an issuer of securities registered with the SEC that traded—and still trade—on the Nasdaq Capital Market. Compl. ¶¶ 1, 27. As an SEC registrant, Sequential is required to file periodic and current reports with the SEC and must comply with Generally Accepted Accounting Principles, or "GAAP," in compiling those reports. *Id.* ¶ 28.

Over its history, Sequential acquired multiple consumer brands. Those acquisitions created substantial goodwill[2] on Sequential's balance sheet (over $300 million—21 percent of Sequential's assets). *Id.* ¶¶ 45-46. Under GAAP, Sequential was required to test its goodwill for impairment (permanent decline in value) at least annually, and to perform additional interim impairment testing when certain indicators, or "triggering events," were present. *Id.* ¶¶ 5, 33. If there was an impairment, then Sequential was supposed to permanently write off goodwill by the amount of its decline in value. *Id.* ¶ 5.

---

[2] "Goodwill" is an intangible asset that reflects the portion of the purchase price in an acquisition that is higher than the sum of the net fair value of all of the assets purchased and the liabilities assumed in the process. Compl. ¶ 5.

By October 2016, Sequential knew that its stock price—a key indicator of potential impairment—had been declining for over a year.  *Id.* ¶¶ 47, 54-56.  After Sequential narrowly passed its annual goodwill impairment test, its stock price continued to decline.  Prompted by concerns from its Audit Committee, Sequential conducted two tests, as of December 14 and 31, 2016, which showed that its goodwill was likely impaired.  *Id.* ¶¶ 2-3, 64-68.  These tests used the ***exact same goodwill impairment fair value testing methodology*** that Sequential had both disclosed to investors that it would use to examine goodwill, and had actually used just weeks earlier in connection with its annual impairment testing.  *Id.* ¶¶ 2, 13, 66, 77, 96.  But Sequential ignored this clear, objective evidence of impairment, and instead performed a strained, biased, and outcome-driven qualitative assessment to unreasonably conclude that goodwill was ***not*** impaired. *Id.* ¶¶ 2-3, 13, 69-77.  This biased assessment was designed from the start to "support [Sequential's] value as it relates to goodwill," rather than to learn the truth.  *Id.* ¶¶ 69-77.

If Sequential had reasonably followed up on the objective evidence of impairment that it had in the fourth quarter of 2016, then Sequential would have disclosed to investors that goodwill was impaired by ***over $100 million***, a material amount.  *Id.* ¶¶ 1, 7-9, 79-84.  Instead, Sequential took no goodwill impairment, and continued to improperly avoid writing off goodwill during the first three quarters of 2017.  Sequential's SEC public filings, representations to investors, and books and records for 2016 and the first three quarters of 2017 were materially false and misleading.  *Id.* ¶¶ 84-124.  Sequential's sole internal accounting control relating to the assessment of goodwill impairment was deficient in design and application, and failed to provide reasonable assurance that Sequential accounted for goodwill in compliance with GAAP.  *Id.* ¶¶ 16-17, 128-37.  Sequential belatedly impaired ***all*** of its goodwill—over $300 million—in the fourth quarter of 2017, but never corrected its prior misstatements and accounting errors.  *Id.* ¶¶ 4, 18, 85, 125-27.

By engaging in the deceptive course of conduct described in the Complaint, Sequential violated the antifraud, reporting, books and records, and internal accounting control provisions of the Securities Exchange Act of 1934 ("Exchange Act") and the Securities Act of 1933 ("Securities Act"). *Id.* ¶¶ 19, 139-66.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the SEC must plead "only enough facts to state a claim to relief that is plausible on its face." *SEC v. Yin*, 17-cv-00972 (JPO), 2018 WL 1582649, at *2 (S.D.N.Y. Mar. 26, 2018) (Oetken, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Courts must accept as true all well-pleaded factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Yin*, 2018 WL 1582649, at *2 (cleaned up).

## ARGUMENT

In its motion to dismiss, Sequential mounts an unprincipled, scattershot attack on the Complaint. Sequential's motion disregards the applicable standard of review, the relevant law, the allegations of the Complaint, and common sense. This Court should deny Sequential's motion.

## I. THE COMPLAINT STATES A CLAIM FOR NEGLIGENCE-BASED FRAUD AND DISCLOSURE VIOLATIONS (COUNTS I & II)

Sequential argues that the SEC's Section 17(a)(3) claim for negligence-based fraud must be dismissed, because the violations of a publicly traded company with periodic and current reporting obligations to the SEC somehow did not occur "in the offer or sale of securities," Def. Mem. § I.A, and for failure to plead "scheme liability," *id.* § I.B. Sequential further argues that

both Counts I and II must be dismissed for failure to plead falsity and materiality.  *Id.* §§ I.C-I.D.

The SEC's claims are well-pleaded, and Sequential's arguments have no merit.

### A.  Sequential's Fraud Occurred "In the Offer or Sale" of Securities

Sequential demands dismissal of the SEC's claim for violation of Section 17(a)(3), which proscribes negligence-based fraud, asserting that the SEC fails to plead that Sequential's fraud occurred in the "offer or sale of any securities."  Sequential argues that its stock issuances during the Relevant Period were purportedly "pursuant to its benefit plans, under which Sequential Brands does not *sell* stock, but rather grants shares to its employees, consultants, and directors to incentivize them to continue their employment at the Company."  Def. Mem. at 7 (emphasis in original).  Sequential's argument is incorrect on both the facts and the law.

Section 2(a)(3) of the Securities Act provides that "[t]he term 'sale' or 'sell' shall include *every* contract of sale or disposition of a security or interest in a security, for value.  The term 'offer to sell', 'offer for sale', or 'offer' shall include *every* attempt to offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value."  15 U.S.C. § 77b(a)(3) (emphasis added).  The term "for value" encompasses an exchange of services or future services.  *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 560 (2d Cir. 1985).  As Sequential admits, the Supreme Court has held that the phrase "in the offer or sale of any securities," as used in Section 17(a) of the Securities Act, is defined "broadly" and is "expansive enough to encompass the *entire selling process*."  *United States v. Naftalin*, 441 U.S. 768, 773 (1979) (emphasis added).  "[S]ection 17(a) must be given broad scope and flexible interpretation in order to encompass all the ingenious variations of security fraud that arise."  *United States v. Jensen*, 608 F.2d 1349, 1354 (10th Cir. 1979).  Section 17(a) does not require that the fraud occur in any particular phase of the selling transaction.  *See, e.g.*, *SEC v. Czarnik*, No. 10 Civ. 745, 2010 WL 4860678, at *4-5 (S.D.N.Y. Nov. 29, 2010) (quoting *Naftalin*, 441 U.S. at 772-73).

This Circuit has long held that the antifraud provisions of the federal securities laws:

> were meant to be broad and . . . are obviously meant to be inclusive
> [and] embrace a fundamental purpose . . . to substitute a philosophy
> of full disclosure for the philosophy of caveat emptor and thus to
> achieve a high standard of business ethics in the securities industry.
> . . . Congress intended securities legislation enacted for the purpose
> of avoiding frauds to be construed not technically and restrictively,
> but flexibly to effectuate its remedial purposes.

*SEC v. First Jersey Sec. Corp.*, 101 F.3d. 1450, 1466 (2d. Cir 1996) (cleaned up).

Here, the SEC alleges that Sequential registered a stock offering to employees, third-party

consultants, and directors on its Form S-8, which was signed by Sequential's then-CEO, then-

CFO, and Board of Directors.  Compl. ¶¶ 23-24.  The SEC further alleges that Sequential's Form

S-8 incorporated by reference its periodic and current reports filed with the SEC, including its false

and misleading reports on Forms 10-K, 10-Q, and 8-K.  *Id.* ¶ 24; *see also* Ex. 1 (Form S-8)

(incorporating by reference "all documents filed by Sequential pursuant to Sections 13(a), 13(c),

14 and 15(d) . . . on or after the date of this Registration Statement").

A Form S-8 "provides an abbreviated registration procedure for securities offered and sold

to an issuer's employees, including consultants, under certain conditions."  *SEC v. Universal

Express, Inc.*, 475 F. Supp. 2d 412, 416 n.2 (S.D.N.Y. 2007).  Sequential's Form S-8 bears the

subtitle, "S-8 Securities to be ***offered*** to employees in employee benefit plans," lists a "[p]roposed

maximum ***offering price*** per share," includes a "[p]roposed maximum aggregate ***offering price***,"

and refers to "all securities ***offered*** hereby."  Ex. 1 (Form S-8) (emphasis added).[3]  The Form S-

8 was intended to "provide essential facts and be filed to disclose important information, in an

---

[3]  Sequential's Form S-8 was accompanied by the consent of legal counsel, Gibson, Dunn
& Crutcher LLC, which states,"[w]e have examined the Registration Statement on Form S-8 . . .
of Sequential . . . to be filed with the [SEC] . . . in connection with the ***offering*** by the Company
of up to 3,500,000 shares of the Company's Common Stock . . . ."  Ex. 2 (Ex. 5.1 to Form S-8).

effort to inform investors and prohibit fraud in the sale of securities." *SEC v. ITT Educ. Servs., Inc.*, 303 F. Supp. 3d 746, 775 (S.D. Ind. 2018).

Sequential does not dispute the SEC's assertion that, during the Relevant Period, it not only *offered*—but also *issued*—securities registered by the Form S-8 to employees, directors, and consultants.  Def. Mem. at 9, 10 (admitting stock issued under Form S-8).  Nor does Sequential dispute the SEC's assertion that some stock issued pursuant to the Form S-8 was "pursuant to individual employment or consulting agreements."  Compl. ¶ 24.[4]  Sequential merely argues— based on inapposite case law and non-binding Commission staff guidance—that *unexecuted*, *non- contributory*, and *unbargained-for* stock options are not an offer or sale of securities.  Def. Mem. at 7-10.  But those are *not* the facts alleged here.  Where, as here, "securities are awarded to or acquired . . . pursuant to individual employment arrangements . . . such arrangements involve separately bargained consideration, and a *sale* of the stock has occurred."  Concept Release on Compensatory Securities Offerings and Sales, S.E.C. Release No. 10521, 2018 WL 10424932, at *2 n.2 (July 18, 2018); Employee Benefit Plans, S.E.C. Release No. 6188, 1980 WL 29482, at *15 n.84 (same).

Sequential's argument that an action for securities fraud under Section 17(a)(3) can only lie where there is: (i) a sale of securities; (ii) for a profit; (iii) to a harmed purchaser; (iv) who made an investment decision interprets Section 17(a)(3)'s nexus requirement far too narrowly and introduces barriers to SEC enforcement that are found nowhere in the statute.  Section 17(a)(3)

---

[4]  Sequential issued stock registered under its Form S-8 pursuant to individual employment or consulting agreements to certain individuals during the Relevant Period.  These stock issuances involved separately bargained-for consideration.  *See, e.g.*, Ex. 3 (Form Def 14-A Proxy Statement) (detailing terms of individual employment agreement with Director, Chief Executive Officer and Secretary, including grant of 100,000 restricted stock units and 175,000 performance stock units); Ex. 7 (Q3 2017 Form 10-Q) (discussing grant of 276,753 restricted stock units to a consultant for future services).

proscribes practices that **would operate** as a fraud upon putative investors, and does not require actual injury. *Czarnik*, 2010 WL 4860678, at \*3 n.2. Thus, unlike private litigants, Congress did not require that the SEC prove that individual investors actually relied on or were harmed by a defendant's misrepresentations. *See, e.g., Berko v. SEC*, 316 F.2d 137, 142 (2d Cir. 1963) ("The Commission's duty is to enforce the remedial and preventative terms of the statute in the public interest, and not merely to police those whose plain violations have already caused demonstrable loss or injury.").[5]

The cases on which Sequential relies are readily distinguishable. The Fifth Circuit's decision in *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019), involved participation in a compulsory employee stock ownership plan, where employees furnished **no** value and **no** tangible and definable consideration in exchange for option grants that were **never** exercised. 925 F.3d at 737. In this case, in contrast, Sequential offered and sold stock, restricted stock units, and preferred stock units for value and pursuant to employee and consulting agreements. Compl. ¶¶ 23-24. Sequential's reliance on *Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551 (1979), is likewise both puzzling and unavailing. That case concerned whether a **completely different type** of retirement benefit was a "security" at all. Here, Sequential does not and cannot contest that the shares it offered and sold through its Form S-8 were securities—why else would it file a Form

---

[5] *See also, e.g., N. Sims Organ & Co. v. SEC*, 293 F.2d 78, 79-80 (2d Cir. 1961) (affirming revocation order based on violations of 17(a)(1)-(3) and 10(b), finding that reliance is not an element of either provision even where the purchaser cancelled the sale and testified that he did not rely on defendant's statement); *Hughes v. SEC*, 174 F.2d 969, 974 (D.C. Cir. 1949) (affirming revocation order based on violations of Sections 17(a)(1-3) and 10(b), stating that "revocation is proper even if one, or none, of the particular clients here involved has been misled or has suffered injury").

S-8 with the SEC registering its offering?

In sum, having alleged that Sequential offered and sold stock pursuant to a Form S-8—which incorporated by reference its false and misleading SEC filings—and that Sequential issued stock pursuant to individual employment and consultant agreements, the SEC need not further allege that anyone who purchased securities was harmed thereby to satisfy the "in the offer or sale" requirement of Section 17(a)(3). *See, e.g., ITT Educ. Servs.,* 303 F. Supp. 3d at 775 (holding that SEC need not present evidence that any of defendant's employees "actually exercised an option based on the Forms S-8, [and] it need not do so to satisfy the 'in the offer or sale' requirement of § 17(a)") (citing *SEC v. Stanard*, No. 06 Civ. 7736, 2009 WL 196023, *27 (S.D.N.Y. Jan. 27, 2009) (false statements contained in Form S-8 were "in the offer or sale" of a security for purposes of Section 17(a))); *see also SEC v. Softpoint*, 958 F. Supp. 846, 863 (S.D.N.Y. 1997) ("Form S-8 registration statements were more closely linked to the offer and sale of [Defendant's] stock, hence they fall within the scope of Sections 17(a)(2) and (3), as well as Section 10(b) and Rule 10b-5."). Sequential's fraud scheme occurred "in the offer or sale" of securities for purposes of Section 17(a)(3).

### B. The SEC Has Pleaded Transactions, Practices, and Courses of Business by Sequential That Operated as a Fraud and Deceit

Sequential next asks this Court to dismiss Count I for failure to plead "scheme liability" as a matter of law. Def. Mem. at 10. Sequential's argument: (i) ignores the Supreme Court's decision in *Lorenzo v. SEC*, ___ U.S. ___, 139 S. Ct. 1094 (2019)—which overruled the case law on which Sequential relies; (ii) runs contrary to the plain language of Section 17(a)(3); and (iii) cherry-picks allegations from the Complaint. The SEC has pleaded with particularity each of the elements of Section 17(a)(3); Sequential engaged in transactions, practices, and courses of business that

operated or would operate as a fraud and deceit on purchasers.  This Court should reject Sequential's argument.

### 1.    Sequential's Unreasonable and Deceptive Transactions, Practices, and Courses of Business

Section 17(a)(3) makes it unlawful to negligently "engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser" of a security.  15 U.S.C. § 77q(a)(3).[6]  The Complaint pleads that Sequential engaged in myriad unreasonable accounting practices in violation of GAAP in order to delay and avoid impairment for more than a year.  These unreasonable practices breached Sequential's required standard of care and constitute negligent securities fraud under Section 17(a)(3), because GAAP is designed, in part, to protect purchasers of securities by requiring financial results to comport to certain uniform standards.

Among other misconduct, the SEC pleads that Sequential unreasonably ignored objective evidence of goodwill impairment—the two tests as of December 2016—and instead reverted to a subjective, qualitative assessment to delay or avoid impairment.  *Id.* ¶¶ 67-69.  Sequential also unreasonably adopted a results-driven approach for goodwill impairment testing.  As explained by Sequential's former CFO, if the Company ***passed*** goodwill impairment testing, then it could move on, but if the Company was likely to ***fail*** goodwill impairment testing, then "more work" needed to be done to avoid impairment.  *Id.* ¶ 71.  Sequential also unreasonably created and provided to its auditors the Goodwill Memorandum, which cherry-picked favorable evidence and omitted the

---

[6]  *See Aaron v. SEC*, 446 U.S. 680, 696-97 (1980) (holding that SEC need not prove scienter to establish violation of Section 17(a)(3), because "the language of § 17(a)(3) . . .  quite plainly focuses upon the ***effect*** of particular conduct on members of the investing public, rather than upon the culpability of the person responsible") (emphasis in original).

most relevant facts (the December 2016 testing results), which indicated an impairment.  *Id*. ¶¶ 76-79.

Given ASC 350 and GAAP's clear guidance, no reasonable issuer would **ignore** objective evidence of impairment under its own disclosed goodwill impairment testing methodology, as Sequential did.  Sequential's deceptive accounting practices, and insistence on favoring cherry-picked subjective analyses over **objective facts**, resulted in Sequential's making and disseminating material misstatements and omissions in eight periodic and current filings over a one-year period, while at the same time registering 3.5 million shares of stock for offer and sale.

### 2.  In *Lorenzo*, the Supreme Court Overturned Any Requirement for "Deceptive Conduct" Apart From Misstatements

Despite clear evidence that the SEC has pleaded each of the elements of its negligent fraud claim, Sequential nevertheless argues that this Court should dismiss Count I, because it is "well settled" that "misrepresentations or omissions" cannot form the sole basis for liability under Section 17(a)(3).  Def. Mem. at 11.  Sequential's position—once followed by some courts in this district—is no longer tenable following the U.S. Supreme Court's 2019 *Lorenzo* decision.

Sequential inexplicably ignores *Lorenzo*, which held that—even if the defendant was not liable under Section 17(a)(2), because he did not "make" misstatements—the SEC did **not** have to prove conduct separate and apart from misstatements to establish liability under other antifraud provisions of the federal securities laws.  139 S. Ct. at 1099.  In so doing, the Supreme Court reaffirmed and clarified several points critical to this case.  *First*, the Court made clear that the text of the antifraud provisions is "broad," "expansive," and "capture[s] a wide range of conduct."  *Id.* at 1101.  *Second*, the Court reaffirmed that there is "considerable overlap" among the similar provision of Section 17(a) and Rule 10b-5.  *Id.* at 1102.  *Third*, the Court warned against statutory interpretations that would cause fraudulent behavior to "fall outside the scope" of the antifraud

11

provisions, expressly rejecting the defendant's "view that subsection (b) [of Rule 10b-5], the making-false-statements provision, exclusively regulates conduct involving false or misleading statements," *id.* at 1102, since such an interpretation "would mean those who disseminate false statements with the intent to cheat investors might escape liability under the Rule altogether," *id.* at 1103.

In the two years since *Lorenzo* was decided, courts in this Circuit and elsewhere have made clear that misrepresentations, misstatements, and omissions can form the basis for liability under Section 17(a)(3) (and the similar provisions of 17(a)(1), and Rule 10b-5(a) and (c)).[7]  Indeed, in *Lorenzo* itself, the Court upheld liability for a person whose **sole conduct** consisted of disseminating a misstatement made by someone else.  *Id.* at 1099 (liability available against investment banker who distributed false and misleading statements—authored by his boss—to multiple clients).

Conveniently omitting from its brief any reference to *Lorenzo*, Sequential argues that the SEC's Complaint "turns on nothing more than bare allegations of misrepresentations and omissions, which are not inherently deceptive."  Def. Mem. at 11.  Sequential's argument mischaracterizes the factual allegations of the Complaint, which go beyond mere misrepresentations.  But, even more fundamentally, Sequential's argument finds no support in the law post-*Lorenzo*.[8]  Since *Lorenzo*, the overwhelming majority of courts have held that

---

[7]  Although Section 17(a)(3) was not at issue in *Lorenzo*, at least one court of appeals already has held that *Lorenzo* governs Section 17(a)(3).  *See Malouf v. SEC,* 933 F.3d 1248, 1260 (10th Cir. 2019) ("*Lorenzo* thus controls on 17(a)(3) as well as the other provisions.").

[8]  All of the cases cited in Defendant's brief pre-date *Lorenzo*.  Def. Mem. at 10-13.  Moreover, courts in this district already have held that the principal case on which Sequential relies, *SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011), was essentially overruled by *Lorenzo*.  *See SEC v. SeeThruEquity, LLC,* 18 Civ. 10374, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019).

misstatement-based conduct is sufficient to sustain liability under Sections 17(a)(1) and (3) and Rule 10b-5(a) and (c).

For example, in *SEC v. SeeThruEquity, LLC*, 18-CV-10374, 2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019), a court in this district found that defendants could be liable under Section 17(a)(3), based on the SEC's allegations that "defendants repeatedly made false or misleading statements." 2019 WL 1998027, at *5. Similarly, citing both *Lorenzo* and *SeeThruEquity*, in *SEC v. Fiore*, 416 F. Supp. 3d 306 (S.D.N.Y. 2019), a court in this district found that dissemination of false statements can form the basis for Section 17(a)(3) liability. 416 F. Supp. 3d at 320. And, in *Malouf v. SEC,* 933 F.3d 1248 (10th Cir. 2019)*,* the Tenth Circuit upheld liability under Section 17(a)(3) for failing to correct a misstatement. 933 F.3d at 1259*; see also SEC v. Winemaster,* 19-CV-04843, 2021 WL 1172773, at *23 (N.D. Ill. Mar. 29, 2021) ("To the extent [the defendant] claims that Rule 10b-5(a) and (c) require deceptive acts distinct from an alleged misstatement forming the basis of a Rule 10b-5(b) claim, the Court rejects that contention. While this position was previously adopted by many courts, it is no longer tenable . . . in light of the Supreme Court's decision in *Lorenzo v. SEC*, 139 S Ct. 1094 (2019).") (cleaned up); *SEC v. Sugarman,* 19-CV-5998, 2020 WL 5819848, at *7 n.8 (S.D.N.Y. Sept. 30, 2020) (noting that *Lorenzo* expanded the scope of liability under Section 17(a)(1) and Rule 10b-5(a) and (c) to include disseminating false statements); *Set Capital LLC v. Credit Suisse Grp. AG*, No. 18-CV-2268, 2019 WL 3940641, at *14 n.6 (S.D.N.Y. Aug. 16, 2019) ("[E]ven if the ... [d]efendants did not 'make' the [misleading statement] for the purposes of Rule 10b-5(b), [the] [p]laintiffs would still have a viable claim under Rule 10b-5(a), (c) for employment of a scheme to defraud investors using the [misleading statement]." (citing *Lorenzo*, 139 S. Ct. at 1100-01)).

13

Here, in addition to the deceptive transactions, practices, and courses of business discussed above, the SEC alleges that Sequential made material misstatements and omissions in ***eight*** public filings over the course of a year. The SEC alleges that each of Sequential's earnings releases for year-end 2016 and the first three quarters of 2017, and each of its reports on Forms 10-K and 10-Q during the same period, were materially false and misleading. *See* Compl. ¶¶ 89, 102, 108 & 119. In addition, the SEC alleges that Sequential failed to correct these misstatements and omissions once they were made, and, in fact, incorporated them by reference into its Form S-8, providing another basis for liability under Section 17(a)(3) (Compl. ¶ 24). *See Malouf,* 933 F.3d at 1259 (upholding Section 17(a)(3) liability for failure to correct a misstatement). Finally, the SEC alleges that Sequential disseminated those misstatements and omissions to the public:

> By drafting, making, ***and disseminating*** repeated material misstatements in its current reports and earnings releases on Forms 8-K, quarterly reports on Form 10-Q, and annual report on Form 10-K, Sequential engaged in an transaction, practice, or course of business that operated as a fraud or deceit on purchasers of Sequential's securities*. **Sequential's violations were not limited to an isolated accounting error or mistake.***

*Id.* ¶ 146 (emphasis added). Sequential's argument fails as a matter of law.[9]

Finally, even if this Court were to hold that the requirement for deceptive conduct set forth in *SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011), is still good law post-*Lorenzo*, Sequential's motion nevertheless should be denied. Contrary to Sequential's assertions, the Complaint does far

---

[9]   Because the SEC has alleged here that Sequential disseminated misstatements, this case is distinguishable from *SEC v. Rio Tinto PLC*, 17 Civ. 7994, 2021 WL 818745 at *2 (S.D.N.Y. Mar. 3, 2021) (stating that "the SEC does not allege that Defendants disseminated such false information" in finding that SEC had not alleged a violation under *Lorenzo* standard). In any event, the limits that the district court imposed on the scope of Section 17(a)(3) in *Rio Tinto* cannot be reconciled with the text of the statute or the Supreme Court's decision in *Lorenzo*. Indeed, in response to the decision, the SEC has filed its first request for an interlocutory appeal since 2011. *See* SEC's Motion for Interlocutory Appeal, *SEC v. Rio Tinto PLC*, 17 Civ. 7994 (AT) [ECF #218].

more than allege mere misstatements and omissions.  The SEC alleges, with particularity, that Sequential—by and through its senior accounting and finance personnel, including its former CFO—turned a blind eye to objective evidence of impairment and instead engaged in after-the-fact accounting machinations and deceptive practices in order to conceal its goodwill impairment from purchasers and the investing public.  Sequential's misconduct pre-dates and caused the misstatements and omissions in its public filings, but was not merely *part* of the misstatements.  Thus, even if this Court follows the outdated line of precedent mistakenly cited by Sequential—which it should not—Defendant's motion to dismiss must still be denied.

Sequential's argument misapprehends the relevant law and ignores the facts alleged in the Complaint.  The SEC has pleaded its fraud claim.  This Court should deny Defendant's motion to dismiss Count I.

### C.    The SEC Has Pleaded Falsity

Sequential next asserts that this Court must dismiss both Counts I and II for "fail[ure] to plead falsity as a matter of law," because "[g]oodwill impairment determinations are statements of opinion, not 'matters of objective fact,'" and the SEC purportedly has not pleaded sufficient facts to challenge the alleged opinion statements under the Supreme Court's opinion in *Omnicare, Inc. v. Laborers Distr. Council Constr. Indus.*, 575 U.S. 175 (2015).  Def. Mem. at 13-17.  Sequential again ignores the facts alleged in the Complaint and offers a simplistic understanding of the relevant case law to knock down a strawman.  This Court should reject Sequential's argument.

### 1.    Sequential's Deceptive Conduct and Materially False and Misleading Statements and Omissions Are Not Matters of Opinion

The deceptive conduct and false and misleading statements and omissions that are at the heart of this case are not the types of statements of belief that were the subject of the Supreme Court's opinion in *Omnicare*.  The SEC alleges that "as a single reporting unit, [Sequential]

15

***considered its market capitalization, as adjusted for a control premium, to represent its fair value.***"  Compl. ¶ 44 (emphasis in original).  The SEC further alleges that, in the December 2016 tests, Sequential used this disclosed methodology—the same methodology as it had used just weeks earlier in connection with its annual goodwill impairment testing—to determine that it was likely impaired.  *Id.* ¶¶ 2, 13, 66-77, 96.  The SEC alleges that Sequential then ignored and concealed this objective evidence of impairment, ***not*** that Sequential misapplied subjective accounting judgment.

The cases on which Sequential relies are therefore inapposite.  Each of the cases Sequential cites hinges on the ***subjective*** question of ***valuation***, *i.e.,* the application of management's accounting judgment to determine the amount of goodwill.  *See, e.g.*, *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 111 (2d Cir. 2011) ("The statements regarding goodwill at issue here are subjective ones rather than 'objective factual matters.'"); *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15 Civ. 6034 (RJS), 2016 WL 5794774, at *10 (S.D.N.Y. Sept. 30, 2016) (quoting *Fait*); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613-14 (9th Cir. 2017) (citing *Fait*).  In contrast, here, the SEC alleges that: (i) Sequential had objective evidence of impairment, using its own disclosed testing methodology; (ii) Sequential engaged in accounting machinations and deceptive acts to ignore and conceal this objective evidence of impairment from the public; and (iii) as a result, Sequential's public filings and books and records were materially false and misleading.  These are not matters of opinion.

Moreover, Sequential did not couch its public disclosures concerning the amount of its goodwill, income from operations, operating expenses, net loss, total assets, accumulated deficit, or stockholders' equity as expressions of opinion.  *Compare, e.g.,* *Omnicare,* 575 U.S. at 186

("*Omnicare* said in each that '***we believe*** we are obeying the law.'") (emphasis added), *with* Compl. ¶¶ 4, 9-10, 12, 79, 81-82, 84, 86, 88, 91, 93, 101, 103, 105, 109, 111, 120, 122, 124, 126 & 151-52 (detailing materially false and misleading metrics disclosed in SEC filings).  Sequential did not tell the public that it "believed" goodwill to be $300 million, or that it "believed" earnings per share to be $0.68.  Nor did Sequential tell the public that it might ignore the objective results of two goodwill impairment tests conducted using its disclosed fair value methodology in favor of a cherry-picked and biased subjective assessment.  This Court should reject Sequential's *post hoc* argument, as many other courts have done in similar circumstances.  *See, e.g.*, *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-2475, 2018 WL 2933406, at *5-7 (M.D. Tenn. Apr. 19, 2018) (applying *Omnicare* and finding allegations concerning failure to test and impair goodwill sufficient to state a claim); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, CV: 10-2847, 2011 WL 12855820, at *7 (N.D. Ala. June 7, 2011) (holding plaintiffs sufficiently pleaded allegations that defendants' goodwill was overstated, false, and misleading).[10]

## 2.   Even if Goodwill Impairment Is a Matter of Opinion, *Omnicare* Does Not Preclude This Action

Even if this Court finds that goodwill impairment is a matter of opinion, though, the SEC's claims are well-pleaded under *Omnicare.  Omnicare* did not preclude ***all*** challenges to statements of belief and opinion.  Rather, the Supreme Court held that a statement of belief or opinion is actionable if, the plaintiff pleads that (i) "the speaker did not hold the belief she professed"; (ii) "the supporting facts [the speaker] supplied were untrue"; or (iii) the stated opinion, "though

---

[10]   SEC regulations provide that financial statements included in SEC filings must comply with GAAP.  17 C.F.R. § 210.4-01.  Treating GAAP determinations reflected in corporate financial statements as mere expressions of opinion could significantly affect enforcement of the disclosure provisions in the securities laws, many of which can be violated by negligence, without any showing of subjective knowledge of falsity or even a showing of recklessness.

sincerely held and otherwise true as a matter of fact," "omit[ted] information whose omission ma[de] the [stated opinion] misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (citing and quoting *Omnicare,* 575 U.S. at 186, 194).  The Court made clear that even statements of opinion must be based on some "meaningful . . . inquiry," such that they "fairly align[] with the information in the issuer's possession," *id.* at 188-89, and that "subjective belief, in the absence of the expected inquiry or in the face of known contradictory evidence, would not insulate [an issuer] from liability." *Id.* at 189 n.6.

Here, the SEC alleges both that Sequential's decision not to write down impairments in the fourth quarter of 2016 did not reasonably align with the information Sequential had at the time, and that Sequential buried its head in the sand to ignore contradictory facts.  Compl. ¶¶ 15, 97. Sequential's representations that there were no goodwill impairments and that goodwill was over $300 million were made in the face of overwhelming contrary facts.

*First*, and most importantly, Sequential was aware of (but hid from investors) that two tests, conducted using the ***same methodology*** as disclosed to investors and used in connection with Sequential's annual goodwill impairment testing just weeks earlier, showed that goodwill was likely impaired.  *Id.* ¶¶ 2, 13, 66, 77, 96.  Nowhere did Sequential inform investors (or its auditor) that it already had determined under GAAP and ASC 350 that it likely was impaired, before conducting a ***different*** test to reach a different conclusion.  *Id.* ¶¶ 67, 76-79.  ASC 350 is clear that it creates a two-step analysis, in which the first question is to answer whether or not carrying value more likely than not exceeds fair value.  *Id.* ¶¶ 35-39.  Here, having answered that question "yes," Sequential ignored that objective evidence, and instead conducted a biased and strained qualitative assessment to answer the ***same exact question*** "no."  *Id.* ¶ 70.  Under the circumstances, a reasonable investor would not expect Sequential to ignore the objective evidence in its possession

in order to avoid or delay impairment.  Accordingly, the statements that Sequential made with regard to goodwill in Q4 2016 were directly contradicted by information of which Sequential (but not investors) was aware, and Sequential cannot reasonably have believed its statements to the public regarding goodwill were accurate.  *Compare, e.g.*, *id.* ¶¶ 7, 69-80, *with City of Omaha, Nebr., Civilian Emps. Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012) (failing to allege "that defendants did not believe in their statements of opinion regarding . . . goodwill at the time they made them.").

*Second*, Sequential knew or should have known that the qualitative analysis that it conducted relied on a biased and cherry-picked assessment of factors.  Compl. ¶¶ 69-80.  The Complaint alleges that "[i]n connection with this qualitative analysis, Sequential's senior accounting and finance personnel cherry-picked the evidence most favorable to Sequential and ignored other ASC 350 factors that would have led to a conclusion that goodwill was likely impaired.  With respect to the continuous decline in Sequential's stock price, for example, the Vice President of Finance stated, 'Our stance is that the drop in stock price does not constitute an impairment event that would necessitate an interim impairment test.  In order to take that stance, we have to state that we believe an impairment *is not more likely if we would perform that test*.'" *Id.*  ¶ 75.  But Sequential already had conducted just such a test, and knew that impairment was likely.  Sequential's senior accounting and finance personnel also omitted from the memorandum numerous other negative events and changes in the Company's business that pertained specifically to fair value, and were required, under ASC 350-20-35-3F, to be evaluated as potential indicators of impairment in the assessment of impairment under ASC 350.  *Id.* ¶ 76 (listing omitted factors).  The SEC has more than alleged that Sequential's goodwill disclosures did not fairly align with the information in Sequential's possession at the time.  *See Zwick Partners*, 2018 WL 2933406, at *6

(holding that "given the underlying 'red flags,'" plaintiffs sufficiently alleged that defendants' decision not to test for goodwill impairments and not to take those impairments was fraudulent and that defendants' assurances did not fairly align with the information in defendants' possession at the time); *Local 703*, 2011 WL 12855820, at *7; *see also BP p.l.c. Sec. Litig.,* MDL No. 4:10-MD-2185, 2016 WL 3090779 at *14 (S.D. Tex. May 31, 2016) (statements of opinion found to be materially misleading because the company was aware of facts "the omission of which made . . . [the] opinion misleading to a reasonable investor" and because the company failed to conduct a meaningful inquiry before stating its opinion); *Lehman Bros. Sec. & ERISA Litig.,* 131 F. Supp. 3d 241, 255 (S.D.N.Y. 2015) (a statement of opinion may be actionable where it does "not 'rest on some meaningful . . . inquiry,' rendering it 'misleading to a reasonable person'").

*Finally*, the misstatements and omissions that resulted from Sequential's deceptive accounting practices and fraudulent course of business were made in formal documents required by law to be filed with the SEC.  Each filing was signed by a senior corporate officer.  Compl. ¶¶ 23, 43, 49-51, 62, 89, 92, 102, 104, 108, 110, 119, 121, 125.  Each statement reflected the official position of the company on important matters, *e.g.*, the company's apparent financial health and reported earnings.  Consequently, a reasonable investor would have understood that by making these statements, Sequential was representing that it had conducted a reasonable inquiry, there was a factual basis for the statements, and there were no undisclosed facts materially inconsistent with the statements.  *See Lehman Bros.*, 131 F. Supp. 3d at 253 ("[I]n the context of 'formal documents,' like financial statements filed with the SEC, reasonable investors do not, and are right not to, expect opinions contained in those statements to reflect baseless, off-the-cuff judgments.").

Sequential did not conduct a meaningful inquiry before making the statements at issue here and did not have a reasonable factual basis for those statements.  In *Omnicare*, the Court stated

that if an issuer told investors that "[w]e believe our conduct is lawful," but made that statement "without having consulted a lawyer, it could be misleadingly incomplete" because the opinion did not rest on a "meaningful . . . inquiry."  575 U.S. at 188.  Here, in the fourth quarter of 2016 and in each subsequent quarter until corrected, Sequential expressly and impliedly told the investing public "goodwill is not impaired."  Sequential took the position that GAAP and the securities laws did not require Sequential to impair at least $100 million of goodwill, even though Sequential knew or should have known that using its own disclosed goodwill impairment methodology, carrying value exceeded fair value.  In other words, Sequential possessed *objective evidence* that: (i) goodwill was more likely than not impaired; (ii) the impairment value that Sequential disclosed to the public was false; and (iii) its disclosed valuation did not rest on a meaningful inquiry. Sequential also withheld crucial information about goodwill impairment from its independent auditor.  Compl. ¶¶ 7(d)-(e), 13-14, 17, 67, 69, 74, 79, 136.

The facts inconsistent with Sequential's SEC filings were never disclosed.  Nor did Sequential disclose its failure to take into consideration objective evidence of impairment, the lack of a test to confirm the impairment and determine its magnitude, or that Sequential engaged in a cherry-picked and biased assessment to delay and avoid goodwill impairment.  As a result, Sequential's disclosure of goodwill in its public filings, even if deemed to be a statement of opinion, was misleading by omission and, therefore, objectively false.  *See SEC v. Ustian*, No. 16C-3885, 2017 WL 365572, at *18 (N.D. Ill. Jan. 24, 2017) (denying motion to dismiss SEC claim involving an expression of opinion where the complaint alleged that the defendant company did not have "reasonable basis" for the opinion statement).

The SEC has alleged falsity with the requisite particularity.  This Court should deny Sequential's motion to dismiss Counts I and II on this ground.

**D.     The SEC Has Pleaded Materiality**

Sequential also moves to dismiss Counts I and II of the Complaint for failure to plead materiality.  Def. Mem. at 18.  This Court should reject Sequential's argument.

As an initial matter, and as this Court has recognized, "materiality 'will rarely be dispositive in a motion to dismiss.'"  *SEC v. Im*, No. 17-CV-3613, 2018 WL 840094, at *3 (S.D.N.Y. Feb. 12, 2018) (Oetken, J.) (quoting *Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010)).  The Supreme Court has identified materiality as "especially well suited for jury determination," *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991), because materiality is a "fact-specific inquiry" that "depends on the significance the ***reasonable investor*** would place on the withheld or misrepresented information."  *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988).  Accordingly, "a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are ***not*** material unless they are s***o obviously unimportant*** to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000) (emphasis added) (cleaned up); *accord IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015) ("*IBEW*").

**1.     Sequential's $100 Million Fraud Materially Impacted Numerous Key Financial Metrics**

A "statement or omission is material if 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act.'" *IBEW,* 783 F.3d at 389 (quoting *ECA & Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) ("*ECA*")).  The Second Circuit has used SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150, 45150-52 (1999) as "persuasive guidance" for evaluating the materiality of a misrepresentation.  *Ganino*, 228 F.3d at 163.  SAB 99 sets forth several qualitative factors to be

considered in evaluating materiality, including, *inter alia*: "[w]hether the misstatement masks a change in earnings or other trends," "[w]hether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise," "[w]hether the misstatement changes a loss into income or vice versa," and "[w]hether the misstatement involves concealment of an unlawful transaction." SAB 99, 64 Fed. Reg. at 45,152.  SAB 99 also speaks to the quantitative analysis, and notes that "[t]he use of a percentage as a numerical threshold, such as 5%, may provide the basis for a preliminary assumption that . . . a deviation of less than the specified percentage with respect to a particular item on the registrant's financial statements is unlikely to be material."  SAB 99, 64 Fed. Reg. at 45,151; *see also ECA*, 553 F.3d at 204 (the "five percent numerical threshold is a good starting place for assessing the materiality of the alleged misstatement").

Here, the SEC has alleged that if Sequential had timely recorded the impairment to goodwill for the fourth quarter of 2016, then Sequential's reported net loss for 2016 would have been *54 times* larger, and the impairment would have equaled *33 percent* of recorded goodwill and *7 percent* of total assets.  Compl. ¶ 152.  Sequential's misstatements and omissions also materially impacted its income from operations for year-end 2016 (334% overstatement) and for the first three quarters of 2017, as well as its shareholders' equity (10% overstatement), among other financial metrics of importance to investors and financial analysts.  *See id.* ¶¶ 4, 9-10, 12, 79, 81-82, 84, 86, 88, 91, 93, 101, 103, 105, 109, 111, 120, 122, 124, 126 & 151-52; *see also* Exhibit 9 (detailing misstatements of financial metrics in Sequential's public filings, as alleged in the Complaint).  The SEC alleges that Sequential's misstatements and omissions impacted reported financial metrics and line items in Sequential's books and records by *presumptively material amounts*.

This Court could decide the question of materiality on this basis alone. *See, e.g., Ganino*, 228 F.3d at 166 ("[I]t is inappropriate to determine at this stage of the litigation that these substantial amounts [ranging from 8% to 17.7% of net income], both in absolute terms and as percentages of total net income for the respective quarters, were immaterial as a matter of law."); *SEC v. Isaza Tuzman*, No. 15-cv-7057, 2017 WL 11606728, at *16 (S.D.N.Y. Sep. 29, 2017) ("[T]he SEC has sufficiently alleged the materiality of the creation of a round-trip slush fund . . . stating that [defendant] overstated its goodwill on its balance sheet by 3% and reducing its outstanding receivables by over $4 million dollars."); *SEC v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 24 (D.D.C. 2017) ("[T]he SEC has alleged that the misstatements and omissions were material because as of October 2012, the $11.4 million overcharge estimate equaled approximately 30% of RPM's net income for the first quarter.").

### 2.    A Reasonable Investor Would Want to Know About Sequential's $100 Million Fraud

This Court need not rely on math alone to reject Sequential's specious materiality argument, however, because the SEC *also* pleads facts sufficient to show that a reasonable investor would consider the undisclosed $100 million goodwill impairment an important part of the total mix of information. The Second Circuit has explained that courts must fully analyze "all relevant considerations" when assessing materiality. *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 717 (2d Cir. 2011); *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 485 (2d Cir. 2011). Under the holistic analysis endorsed by the Court of Appeals, sufficiently strong qualitative evidence of materiality can establish materiality as a matter of law. *Litwin*, 634 F.3d at 717-18.

Here, a reasonable shareholder would consider Sequential's $100 million goodwill impairment error—which persisted for a year and impacted multiple reported metrics—material. Intangible assets, including goodwill, were the foundation of Sequential's business model. It is

undisputed that goodwill comprised more than ***one-fifth*** of Sequential's total assets—making misstatements and omissions concerning goodwill impairment significant to Sequential's investors and analysts. Compl. ¶¶ 16, 46. By delaying and avoiding impairment, Sequential created a false and misleading appearance of financial health and ability to execute on its business plan. *Id.* ¶¶ 4, 53, 91, 93, 103, 105, 111 & 145. Sequential management, investors, and analysts also placed importance on meeting or beating earnings estimates. *Id.* ¶¶ 91, 93, 103, 105 & 111. As alleged in the Complaint and shown in Exhibit 9, Sequential's $100 million misstatement of goodwill turned a ***69 cent*** earnings per share loss for fiscal year 2016 into a mere ***one cent*** loss. *Id.* ¶¶ 82, 151. A reasonable investor assuredly would have wanted to know this information.

### 3.    Sequential's Stock Price Movement Arguments Are Unavailing

To rebut the SEC's robust allegations of materiality, Sequential points to its stock price movement. It is unclear why. The reaction of the market to Sequential's belated write-down of its goodwill was a ***sudden, precipitous, and material decline*** in Sequential's stock price—which, by Sequential's admission, tumbled ***13 percent*** the day of the announcement. Def. Mem. at 21. Moreover, even if there were ***no*** change in Sequential's stock price whatsoever, many courts have rejected attempts to dismiss on this ground. *See*, *e.g., SEC v. Mudd*, 885 F. Supp. 2d 654, 667 (S.D.N.Y. 2012) ("[T]he SEC does not have to show a stock drop to plead or prove materiality."); *see also Bilzerian*, 926 F.2d at 1298 (stock price movement "does not establish the materiality of the statements made," but "is a factor the jury may consider relevant"). To the extent Sequential wishes to argue, outside the four corners of the Complaint, that a subsequent rise in its stock price negates the 13 percent stock drop following its belated impairment to goodwill in 2017, it is welcome to do so to a jury at trial. But it does not prove immateriality on a motion to dismiss.

25

II.     **THE COMPLAINT STATES A CLAIM FOR BOOKS AND RECORDS AND INTERNAL ACCOUNTING CONTROLS VIOLATIONS (COUNTS III & IV)**

A.     **Sequential's Books and Records Violation Is Well-Pleaded**

In direct contradiction to the well-pleaded allegations of the Complaint, Sequential next argues that the SEC has failed to allege an accounting violation, because the SEC has somehow failed to allege "***objective facts*** that Defendant['s] accounting methods violated applicable accounting standards."  Def. Mem. at 22 (quoting *Harris v. Amtrust Fin. Servs.*, 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015) (emphasis in original)).  Contrary to Sequential's argument, this case is not about subjective accounting judgment.  The SEC brought this case ***because*** Sequential ignored objective facts in its possession showing goodwill was likely impaired.  This Court should deny Sequential's bid to dismiss Count III.

To state a claim for relief under the books and records provision of Section 13(b)(2)(A), the SEC must plead that Sequential failed to "make and keep books, records, and accounts" that "accurately and fairly reflect the transactions and dispositions of the assets of the issuer."  15 U.S.C. § 78m(b)(2)(A).  Neither scienter nor materiality is required to establish a violation of this provision.  *See SEC v. McNulty*, 137 F.3d 732, 740-41 (2d Cir. 1998); *Stanard*, 2009 WL 196023, at *31.  Here, the SEC alleges that Sequential's financial statements for the fourth quarter of 2016 and the first three quarters of 2017 were inaccurate, because Sequential failed to account properly for the material impairment to goodwill in the fourth quarter of 2016, and then carried this error forward into subsequent quarters.  The Complaint alleges that Sequential's 2016 financial statements contained several material accounting errors, including: (i) an overstatement of income from operations; (ii) an understatement of operating expenses; (iii) an understatement of net loss; (iv) an overstatement of goodwill; and (v) an overstatement of total assets.  Compl. ¶¶ 9-11, 81-83, 91-93, 126-27 & 151-52.  The Complaint further alleges that—through its continued failure to

properly apply GAAP and ASC 350 and the impact of its decision to improperly carry over $300 million of goodwill as non-impaired—Sequential's financial statements for the first three quarters of 2017 also contained several material accounting errors, including: (i) an overstatement of goodwill; (ii) an overstatement of total assets; (iii) an understatement of accumulated deficit; and (iv) an overstatement of stockholders' equity. *Id.* ¶ 12, 84, 102-05, 108-11, 119-24 & 126-27.  The SEC pleads that there was "***no reasonable basis under GAAP*** for Sequential to have accounted for and reported goodwill and other key financial metrics in the manner in which it did." *Id.* ¶ 87 (emphasis added).

Other than summarily asserting that the SEC "ignore[s] the Company's efforts to comply with all accounting guidelines at the time," and claiming (contrary to the allegations of the Complaint), that "the Company continued to evaluate its goodwill through the first three quarters of 2017," Def. Mem. at 23, Sequential provides this Court with no basis whatsoever to conclude that the SEC has not pleaded its claim under Section 13(b)(2)(A).  Nor could it.  The SEC has pleaded, in painstaking detail, the manner in which Sequential improperly circumvented GAAP and ASC 350 and the material impact of this error on Sequential's books and records for Q4 2016 and the first three quarters of 2017.  Sequential has failed to identify any ground for dismissal of this claim.  *See, e.g.*, *RPM*, 282 F. Supp. 3d at 33 (denying motion to dismiss Section 13(b)(2)(A) claim, where SEC "sufficiently alleged that the financial statements contained false and misleading statements, and that disclosure and accrual were not made at the appropriate time").

### B.    Sequential's Internal Accounting Controls Violation Is Well-Pleaded

Finally, Sequential argues that Count IV of the Complaint, which alleges that Sequential violated the internal accounting controls provision of the securities laws, must be dismissed because the "Complaint does not sufficiently allege an ***absence*** of requisite internal controls over financial reporting."  Def. Mem. at 23.  Once again, Sequential misstates both the law and the

27

facts, and this Court should deny its motion to dismiss Count IV.

As Sequential acknowledges, Section 13(b)(2)(B) requires issuers to "maintain a system of internal accounting controls sufficient to provide reasonable assurances that," among other things, the company's financial statements can be prepared "in conformity with [GAAP]."  15 U.S.C. § 78m(b)(2)(B).  Scienter and materiality are not required.  *See Stanard*, 2009 WL 196023, at *30.

Here, the Complaint alleges that Sequential had a *single* internal accounting control over goodwill impairment testing, and that this *single* control was not sufficient to provide reasonable assurance that Sequential's financial statements were prepared in conformity with GAAP and ASC 350.  Among other deficiencies, the SEC alleges that Sequential failed to implement internal accounting controls, policies, or procedures reasonably designed to: (i) identify potential indicators or triggers for impairment and to cause the Company to conduct appropriate interim goodwill impairment testing where, pursuant to ASC 350, indicators of impairment were present; (ii)  cause the Company to conduct appropriate impairment testing where, pursuant to ASC 350, it was more likely than not that the carrying amount of Sequential's reporting unit exceeded its fair value; (iii) require any formal review or documentation, including documentation of the decision of the Company *not* to conduct additional impairment testing where it concluded no triggering events were present; and (iv) *identify* potential triggers, nor was there any requirement to *document* such assessments when no triggers were identified.  Compl. ¶¶ 128-37.  The SEC pleads that Sequential had *precisely one* internal control to govern goodwill impairment testing, which merely required that the Director of Accounting and External Reporting assess whether an impairment was necessary, and then send a memo to the CFO and VP of Finance to review.  The SEC further alleges that an internal control like that is insufficient to provide reasonable assurances that Sequential's financial statements would be prepared in conformity with GAAP, since "if that

control fails—which could be something as simple as the CFO saying, 'Nah, let's find a way not to declare this'—you're at risk for material error."  Ex. 8.

Sequential ignores these allegations of the well-pleaded Complaint, and argues only that it "acted reasonably in monitoring for impairment" and "maintained accurate records."  Def. Mem. at 23-24.  These claims (for which Sequential provides no citation) are both outside the four-corners of the Complaint and directly contrary to the facts the SEC **does** allege.  But more importantly, the question for an internal accounting controls claim is not whether Sequential acted reasonably or whether its books and records were accurate, but whether its single internal accounting control was ***sufficient to provide reasonable assurances*** that its accounting would conform with GAAP.  *See, e.g.*, *SEC v. Adelphia Commc'ns Corp.*, 02 Civ. 5776, 2006 WL 8406833, at *16 (S.D.N.Y. Nov. 16, 2006) (finding, after trial, that defendant violated Section 13(b)(2)(B) by failing to devise a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to maintain accountability for assets, where company kept records that did not accurately reflect material transaction).  The SEC pleads that Sequential's sole internal accounting control—which did not require systematic review of potential indicators of impairment and unreasonably relied on senior executives' general knowledge of the business and undocumented discussions to provide the financial and operational information that went into the Company's testing—was insufficient.  *See, e.g., SEC v. e-Smart Tech.*, 82 F. Supp. 3d 97, 109-10 (D.D.C. 2015) (finding sufficient evidence of a lack of "virtually any internal accounting controls" to grant summary judgment in favor of the SEC where some of the admitted internal weaknesses included "poor communication among staff and outside consultants" that led to "significant inaccurate information," and a lack of higher-level supervisory review of the accounting process); *see also RPM*, 282 F. Supp. 3d at 34 (denying motion to dismiss

where "complaint paint[ed] the picture that [the General Counsel] and a few other RPM personnel possessed all of the material information regarding the investigation, and that there were insufficient internal checks on their authority and discretion when it came to disclosing or making judgments based on that information").  There is no basis for dismissal of the SEC's internal accounting controls claim.

## CONCLUSION

For the foregoing reasons, this Court should deny Sequential's motion to dismiss in its entirety.

Dated: April 26, 2021                  Respectfully submitted,


By:  _____
     Sarah Heaton Concannon
     (SDNY Bar No. SC-9111)
     Christopher M. Bruckmann
     (SDNY Bar No. CB-7317)
     Securities and Exchange Commission
     100 F Street, N.E.
     Washington, D.C. 20549
     Telephone:  (202) 551-5361 (Concannon)
     Telephone:  (202) 551-5986 (Bruckmann)
     Facsimile:  (804) 708-6125
     Email:  ConcannonS@sec.gov
     Email:  BruckmannC@sec.gov

     *Attorneys for Plaintiff Securities and*
     *Exchange Commission*

## CERTIFICATE OF SERVICE

I certify that on April 26, 2021, I caused a copy of the foregoing Securities and Exchange

Commission's Memorandum of Law in Opposition to Sequential Brands Group, Inc.'s Motion to

Dismiss the Complaint to be served by ECF on all parties who have made an ECF appearance.

Sarah Heaton Concannon

*Attorney for Plaintiff*
*Securities and Exchange Commission*

31