Exhibit 8



(https://www.radicalcompliance.com/)

# SEC Charges Retailer on Impairment Issue

By Matt Kelly | December 11, 2020 | 0

You don't see this too often: the Securities and Exchange Commission has charged a fashion retailer with failing to impair goodwill in a timely manner, citing weak internal controls over how management determined goodwill and an attempt to mislead the company's auditors.

The company in question is **Squential Brands**, which sells clothing brands such as Avia, Gaiam, and Heelys, and designer lines from Jessica Simpson and William Rast, among others. (So, clothes I never wear.) The SEC filed its complaint in federal court Friday morning.

The heart of the SEC allegations are these: that Sequential suffered a declining stock price for most of 2016, which only accelerated as the year went on. In November 2016, the company assessed the $307 million in goodwill assets it carried on the balance sheet and decided no impairment was necessary. Just one month later, however, additional tests revealed that impairment **would** be necessary.

Instead of disclosing that unwelcome news, the SEC complaint says, Sequential executives then engaged in a "strained, biased, and outcome-driven qualitative analysis which omitted any consideration of its internal fair value calculations… and unreasonably concluded that goodwill was not impaired."

So Sequential turned a blind eye to its impairment issues throughout 2017, which had the practical effect of distorting the operating income and net loss numbers it provided to investors. The company finally disclosed a $304 million impairment charge in the fourth quarter of that year — wiping out all of the company's goodwill in one stroke, and clipping the company's total assets by 21 percent.

The SEC complaint also mentions Sequential's then-CFO (**Gary Klein**, according to Sequential's SEC filings; he left the company in late 2017) as one person responsible for poor oversight, along with the company's vice president of finance and its president and interim CFO.

No statement from Sequential yet on the charges. Although the company did announce last week that it's putting itself up for sale, which seems like a telling statement about the quality of executive management there.

## Goodwill Testing Shenanigans

Testing the value of goodwill is not necessarily easy, so the SEC's complaint against Sequential makes for interesting reading.

First, Sequential reports all its operations as one unit, and uses the company's market capitalization as its benchmark for fair market value. That's important because it means that in this case, testing for goodwill actually is fairly straightforward: if you're carrying goodwill assets at a high value, and the company's market cap plunges, then the carrying value is higher than the fair market value: a recipe for impairment.

In Sequential's case, more than 90 percent of the company's total assets at the end of 2016 were tied up in goodwill and other intangible assets. So when the company's share price tumbled in 2015 and 2016, impairment was virtually inevitable.

Timing is important here. Sequential tested its goodwill assets at the beginning of every October, and in October 2016 the company had a valuation specialist perform an assessment. That assessment, the SEC complaint says, showed no need for impairment **as of Oct. 1, 2016.** Sequential's management passed along that report to its audit firm and the audit committee chairman.

Except, Sequential's share price plunged another 37 percent in the fourth quarter of the year. By late December 2016, Sequential ran a second impairment test using the same criteria as the first one — which, according to the SEC complaint, indicated an impairment charge of $96 million was warranted.

Sequential did not disclose that analysis. Instead, the SEC said —

Sequential's senior accounting and finance personnel, under the direction and oversight of Sequential's then-CFO, conducted a subjective, qualitative assessment to conclude that the market was unfairly undervaluing Sequential and that the company's goodwill was not impaired. In other words, although objective evidence in Sequential's possession… showed that it more likely than not was impaired, Sequential undertook a qualitative assessment to answer the same exact question that had already been answered "YES" — **through objective, quantitative evidence** — "NO."

Sequential kept up that charade through 2017, so the undeclared impairment only grew larger. By the end of 2017 management couldn't shield the numbers any longer, and the $304 million impairment came out with the company's 10-K report.

## Two Points to Consider

First, I'm intrigued that the SEC brought this complaint now.

Coronavirus has hammered corporate performance, especially in sectors such as retail or leisure where goodwill can be a significant part of the company's value. It's no secret that goodwill impairments rose sharply at the beginning of this year: $66 billion in the first quarter of the year, according to Calcbench. We may see more impairments soon from companies whose stock prices suffered this year, but which don't test impairment until the end of the year.

Is the SEC sending a warning to other companies with this enforcement action, that covering up impairments will be viewed harshly? Even if that isn't an intended message from the agency, it's certainly a message Corporate America will hear.

Second, the SEC also faulted Sequential for having precisely one internal internal control to govern goodwill impairment testing. The control was to have the director of accounting and external reporting assess whether an impairment was necessary, and then send a memo to the CFO and VP of finance to review. Any impairment would then be recorded in the general ledger.

Is an internal control like that really sufficient, for a business with so much enterprise value tied up in goodwill? Almost by definition, if that control fails — which could be something as simple as the CFO saying, "Nah, let's find a way not to declare this" — you're at risk for material error. Which is pretty much exactly what the SEC accuses Sequential of doing.

So the other lesson here is to consider the appropriate design of internal controls for goodwill impairment. The more important goodwill is to the balance sheet, the more robust those controls should be. What might that be? Again, look at the SEC complaint:

> There is no contemporaneous documentation showing that any individual at Sequential was monitoring indicators of impairment. Moreover, Sequential did not have in place any internal accounting controls, policies, or procedures requiring any formal review or documentation, including documentation of the decision of the company not to conduct additional impairment testing where it concluded no triggering events were present

Perhaps start by doing the opposite of that.

Share on Share on LinkedinShare on TwitterShare on Facebook
Posted in News and tagged goodwill, SEC enforcement

## Leave a Comment

You must be logged in to post a comment.
Connect with:

