UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

        v.

SEQUENTIAL BRANDS GROUP, INC.,

                    Defendant.

Case No. 1:20-cv-10471 (JPO)

*ORAL ARGUMENT REQUESTED*

**REPLY MEMORANDUM OF LAW OF DEFENDANT
SEQUENTIAL BRANDS GROUP, INC. IN SUPPORT OF ITS
<u>MOTION TO DISMISS THE COMPLAINT</u>**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile:  (212) 351-4035

Dated: June 10, 2021

*Attorneys for Sequential Brands Group, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................ 3

    I.    The Negligence-Based Fraud and False-Filing Claims (Counts 1 & 2) Fail. ..............................................................................................3

        A.    The SEC Has Not Pled an "Offer or Sale of Any Securities." ...................3

        B.    The Complaint Fails to Plead Scheme Liability, Including under *Lorenzo*. ....................................................................................7

        C.    The Complaint Fails to Prove Falsity. .......................................10

            1.    Goodwill Statements Are Not Actionable As Opinion Statements under *Omnicare*. ..............................................10

            2.    The SEC Fails to State a Claim under *Omnicare*. .........................12

    II.    The Accounting & Internal Controls Claims (Counts 3 & 4) Lack Merit...........................................................................................15

CONCLUSION............................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*BP p.l.c. Sec. Litig.*,
   2016 WL 3090779 (S.D. Tex. May 31, 2016) ..........................................................................14

*In re Cendant Corp. Sec. Litig.*,
   81 F. Supp. 2d 550 (D.N.J. 2000) ......................................................................................3

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ...................................................................................13, 14, 15

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)................................................................................11, 12, 14

*Fraser v. Fiduciary Tr. Co., Int'l*,
   2005 WL 6328596 (S.D.N.Y. June 23, 2005) ...................................................................3, 5

*Int'l Bhd. of Teamsters v. Daniel*,
   439 U.S. 551 (1979)................................................................................................4

*Lampkin v. UBS Fin. Servs, Inc.*,
   925 F.3d 727 (5th Cir. 2019) .......................................................................................4

*In re Lehman Bros. Sec. & Erisa Litig.*,
   131 F. Supp. 3d 241 (S.D.N.Y. 2015)...................................................................................13

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   2011 WL 12855820 (N.D. Ala. June 7, 2011)..................................................................10, 14

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019)........................................................................................2, 8, 9

*Malouf v. SEC*,
   933 F.3d 1248 (10th Cir. 2019) .......................................................................................8, 9

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty.*
   *Ret. Ass'n v. MDC Partners, Inc.*,
   2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016).............................................................................11

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)..................................................................................2, 10, 11, 12, 14

*SEC v. Czarnik*,
   2021 WL 4860678 (S.D.N.Y. Nov. 29, 2010 ..........................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*SEC v. Fiore*,
     416 F. Supp. 3d 306 (S.D.N.Y. 2019)...................................................................10

*SEC v. ITT Educ. Servs., Inc.*,
     303 F. Supp. 3d 746 (S.D. Ind. 2018) .......................................................................7

*SEC v. Kelly*,
     817 F. Supp. 2d 340 (S.D.N.Y. 2011)..................................................................7, 8

*SEC v. Lee*,
     720 F. Supp. 2d 305 (S.D.N.Y. 2010)........................................................................8

*SEC v. Monarch Funding Corp.*,
     192 F.3d 295 (2d Cir. 1999)........................................................................................9

*SEC v. Rio Tinto PLC*,
     2021 WL 818745 (S.D.N.Y. Mar. 3, 2021) ...............................................................9

*SEC v. SeeThruEquity*,
     2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019)........................................................8, 9

*SEC v. Softpoint, Inc.*,
     958 F. Supp. 846 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1348 (2d Cir. 1998) ................7

*SEC v. Stanard*,
     2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) ..............................................................7

*SEC v. Stoker*,
     865 F. Supp. 2d 457 (S.D.N.Y. 2012)........................................................................8

*SEC v. Sugarman*,
     2020 WL 5819848 (S.D.N.Y. Sept. 30, 2020)...........................................................9

*SEC v. Winemaster*,
     2021 WL 1172773 (N.D. Ill. Mar. 29, 2021).............................................................9

*SEC v. Ustian*,
     2019 WL 7486835 (N.D. Ill. Dec. 13, 2019).............................................................8

*Set Cap. LLC v. Credit Suisse Grp. AG*,
     2019 WL 3940641 (S.D.N.Y. Aug. 16, 2019), *aff'd in part, vacated in part,
     remanded sub nom. Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64 (2d
     Cir. 2021) .................................................................................................................10

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*United States v. Naftalin*,
   441 U.S. 768 (1979)......................................................................................................4

*Yoder v. Orthomolecular Nutrition Inst., Inc.*,
   751 F.2d 555 (2d Cir. 1985)........................................................................................3

*Zwick Partners, LP v. Quorum Health Corp.*,
   2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018)............................................10, 14

**Statutes**

15 U.S.C. § 77q(a)(3).......................................................................................................3, 7

15 U.S.C. § 78m(b)(2)(B)...................................................................................................15

**Regulations**

17 C.F.R. § 230.701 ..............................................................................................................5

**Other Authorities**

Concept Release on Compensatory Securities Offering and Sales, SEC Release
   No. 10521, 2018 WL 10424932 (July 18, 2018).........................................................5

Employee Benefit Plans, SEC Release No. 6188, 1980 WL 29482 ..............................5

Defendant Sequential Brands Group, Inc. ("Sequential Brands" or the "Company") respectfully submits this Reply in support of its Motion to Dismiss ("Motion" or "Mot."), Dkt. 12, the Complaint ("Compl."), Dkt. 1, filed by the Securities and Exchange Commission ("SEC").

## PRELIMINARY STATEMENT

More than six months have passed since the SEC first brought its Complaint claiming that Sequential Brands violated Section 17(a)(3) of the Securities Act of 1933 ("Securities Act") by negligently failing to take a $100 million impairment in Q4 2016, ***even though it fully impaired its goodwill by $304.1 million just four quarters later***. Since then, the Company's auditor has neither modified nor withdrawn its concurrence with the Company's judgment that goodwill first became impaired in Q4 2017 or that Sequential Brands' financial statements are materially in accordance with GAAP. Despite this, and following days of additional investigative testimony since the filing of the Motion, the SEC continues to press its fraud allegations based on entirely unremarkable facts. The Company's most recent public disclosures tell the story of a Company on the ropes, in part due to the SEC's baseless allegations. The time has come for this case to end so the SEC can pursue actual wrongdoers and Sequential Brands can get back to maximizing the value of consumer brands attempting to overcome the consequences of the COVID-19 pandemic.

As its jurisdictional hook, the SEC's Opposition ("Opp."), Dkt. No. 19, now relies exclusively on the Company's Form S-8 registration for stock issued in connection with Sequential Brands' 2013 Stock Incentive Compensation Plan (the "2013 Plan") to a handful of employees, directors and consultants. Without any allegation that the investing public was issued or traded stock between Q4 2016 through Q3 2017 (the "Relevant Period"), the alleged fraud "victims" are all Company insiders, nearly all of whom were involved in the goodwill impairment decision. Though required by the statute, the SEC's pleading simply does not allege that these insiders' stock benefits were part of an "offer" or "sale" of securities.

1

The SEC's scheme liability claim fares no better.  Relying almost entirely on *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) to maintain its negligent fraud claim, it must be dismissed.  While the SEC has worked fervently since *Lorenzo* to extend its application, there is no published opinion in this Circuit extending *Lorenzo* to a Section 17(a)(3) claim and thereby allowing any misrepresentation or omission whatsoever to be charged as fraud.

The SEC's false-filing claims similarly fail as it is well-settled in the Second Circuit that goodwill statements are opinion statements under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), and are not actionable.  As Sequential Brands stated in its public filings, these statements of opinion are subject to uncertainty and require the use of judgment in accordance with GAAP.  *See* Dkt. 13-2 at 17 (FY 2016 Form 10-K).

As this case proceeds, it becomes ever more clear the SEC is committed to expanding the scope of its authority, rather than rectifying or preventing any actual or potential harm to investors.  Stripped of its rhetoric, the SEC's Complaint boils down to allegations of securities fraud based on some Company stock given to a handful of insiders as part of their standard compensation packages and a few stray comments from a finance team appropriately applying their professional judgment to whether and when to take an impairment based on then-current information.  If accepted as true, the SEC has pled nothing more than a fraud by Company insiders against themselves.  Through this precedent-setting Complaint, the SEC seeks *carte blanche* to bring securities fraud actions without alleging a sale of securities and unlimited authority to bring fraud charges for unintentional misstatements or omissions.  The Complaint should be dismissed with prejudice.

## ARGUMENT

I. **The Negligence-Based Fraud and False-Filing Claims (Counts 1 & 2) Fail.**

A. **The SEC Has Not Pled an "Offer or Sale of Any Securities."**

The SEC concedes that jurisdiction for its negligence-based fraud claim rests solely upon Sequential Brands' issuance of stock to Company insiders—employees, consultants, and directors—during the Relevant Period.  Opp. at 6 (citing Compl. ¶¶ 23-24).  But stock issuances to insiders without any allegation of individually bargained-for shares or an exchange of securities *for* **value** is not an "offer" or "sale," subject to the Securities Act.  15 U.S.C. § 77q(a)(3).

**Stock Issued Pursuant to Sequential Brands' 2013 Plan Is Not Stock Issued "For Value."**  The Form S-8 registration statement on which the SEC relies to allege that Sequential Brands "issued" stock to employees and consultants as "part of an employee benefit plan," Compl. ¶¶ 23-24, simply registered common stock pursuant to the 2013 Plan, Mot. at 7 n.5.  The SEC asserts the statute's use of "for value," "encompasses an exchange of services or future services," and, therefore, sweeps up the stock benefits issued or sold through the 2013 Plan.  Opp. at 5 (citing *Yoder v. Orthomolecular Nutrition Inst., Inc*., 751 F.2d 555, 560 (2d Cir. 1985)).  The case law does not support the SEC's theory. While the Complaint does not allege any bargaining or exchange of value by employees for stock, the private plaintiff in *Yoder* pled her receipt of defendant's stock was explicitly bargained for in exchange for her employment.  751 F.2d 555 at 560; *see also Fraser v. Fiduciary Tr. Co., Int'l*, 2005 WL 6328596, at *4-5 (S.D.N.Y. June 23, 2005) (dismissing Section 10(b) claims where Plaintiff alleged "to have acquired stock through "several employee stock or benefit plans," and "does not allege that he specifically bargained with [defendant] for this stock in exchange for his employment"); *In re Cendant Corp. Sec. Litig*., 81 F. Supp. 2d 550, 556 (D.N.J. 2000) (finding no "purchase or sales of securities," where there was

no allegation that the employee "g[a]ve anything of value for stock other than the continuation of employment nor independently bargains for…stock") (internal quotations omitted).[1]

**Stock Issued Pursuant to Sequential Brands' 2013 Plan Is Not A "Sale" of Securities.**

The SEC asserts that "Section 17(a) does not require that the fraud occur in any particular phase of the selling transaction," but ignores that no "sales" transaction has been properly alleged.  *See* Opp. at 5 (citing *United States v. Naftalin*, 441 U.S. 768 (1979)).[2]  Relying solely on allegations that certain insiders benefited from "an employee benefit plan," Compl. ¶ 23, the SEC stretches *Naftalin* too far.  The SEC's pleading fails to allege that the shares issued pursuant to the Company's benefit plan were individually bargained for as required by *Daniel*, *Yoder*, and their progeny, and offers no case law to excuse its inadequate pleading.  Without an allegation of a bargained-for exchange of value, the case law does not recognize an "offer or sale" on which to bring Section 17(a) claims.  The SEC relies on two Staff Releases for the proposition that shares issued "pursuant to individual employment or consulting agreements," Opp. at 7 (citing Compl. ¶ 24), are necessarily bargained for and, thus, a sale of securities occurred that is subject to Section 17(a), Opp. at 7 (citing Concept Release on Compensatory Securities Offering and Sales, SEC

---

[1] Attempting to distingui*sh Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 558-59 (1979) (holding that Securities Act does not apply to noncontributory, compulsory pension plan), the SEC notes that the "case concerned whether a completely different type of retirement benefit was a 'security' at all."  Opp. at 8 (emphasis removed).  The SEC conveniently ignores its own guidance, case law, and no action letters extending *Daniel*'s reasoning and finding "no purchase or sale" of securities where continued employment is the only consideration given for the shares.  *See* Mot. at 8-9 (collecting SEC guidance, case law, and SEC no-action letter).  The SEC also attempts to distinguish *Lampkin v. UBS Fin. Servs, Inc.,* 925 F.3d 727 (5th Cir. 2019) with the conclusory assertion that "in contrast," to the employees there, "Sequential offered and sold stock, restricted stock units, and preferred stock units *for value* and pursuant to employee and consulting agreements."  Opp. at 8 (citing Compl. ¶¶ 23-24) (emphasis added).  But the SEC's allegations rest entirely on employees and consultants receipt of stock pursuant to the 2013 Plan; the phrase "for value" is simply absent from the Complaint.  *See* Compl. ¶ 24.

[2] The SEC citation to *SEC v. Czarnik*, 2021 WL 4860678, at *4-5 (S.D.N.Y. Nov. 29, 2010) (quoting *Naftalin*, 441 U.S. at 772-73), an unpublished case, is inapposite.  *Czarnik* did not address benefit compensation plans at all, but rather, whether misstatements made indirectly to "the investing public" through "the Issuers' transfer agents" were cognizable as "in the offer or sale of securities."  *Id.*

Release No. 10521, 2018 WL 10424932, at *2 n.2 (July 18, 2018) (the "2018 Request for Comment") and Employee Benefit Plans, SEC Release No. 6188, 1980 WL 29482, at *15 n.84 ("1980 Release")).   The notion that shares issued pursuant to employment agreements are necessarily bargained for finds no support in case law.

First, the Complaint fails to plead anything about the nature of the "individual employment arrangements" that the SEC now asserts must have involved bargaining between the recipient and the Company.  *See Fraser v. Fiduciary Tr. Co., Int'l*, 2005 WL 6328596, at *4 (S.D.N.Y. June 23, 2005) ("[W]hen an employee does not give anything of value for stock other than the continuation of employment nor independently bargains for . . . stock, there is no 'purchase or sale' of securities.") (internal citation omitted).  The absence of any specific allegations is particularly remarkable given the SEC's multiday interviews of the Company's former officers and current and former employees.

Second, the Staff Releases are consistent with Defendant's position that no sale occurred. The SEC's 2018 Request for Comment does nothing more than seek public comment for "ways to modernize the exemption [from registration for non-reporting companies] and the relationship between it and Form S-8."  2018 Request for Comment at 1.  The 2018 Request for Comment acknowledges Defendant's argument that offers and sales of securities *as compensation* should not be treated as the equivalent of an offer and sale *to the public* and, "depending on the circumstances," the Form S-8 registration is not required:

> The Commission has long recognized that offers and sales of securities as compensation present different issues than offers and sales that raise capital for the issuer of the securities . . . . the relationship between the issuer and recipient of securities is often different in a compensatory rather than capital raising transaction. The Commission has thus provided a limited exemption from registration — 17 CFR 230.701 (Rule 701) — for certain compensatory securities transactions as well as a specialized form—Form S-8—for registering certain compensatory transactions . . . . compensatory transactions also may be conducted under the

Securities Act Section 4(a)(2) exemption from registration or under a "no sale" theory, which would not require specific disclosures. *Id.* at *2.

Citing to a footnote from the above paragraph, the SEC asserts that the compensation disclosed in Sequential Brands' Form S-8 was "pursuant to individual employment arrangements . . . such arrangements involve separately bargained consideration and a ***sale*** of securities has occurred." Opp. at 7 (citing *id.* at n.2) (emphasis added).[3]  The full citation makes plain that this understanding of when a "sale" has occurred is not the law, or even guidance from the SEC, but merely a "view" that the "staff has expressed" and now parrots here. *Id.*  Unsurprisingly, the SEC omits the staff's "position generally," which is consistent with Defendant's position:  the grant of stock registered in the Form S-8 was not a sale because it was granted pursuant to the 2013 Plan without any "definable consideration" from any of the recipients. *Id.*  The SEC's 1980 Release, also cited by the SEC, confirms "the staff generally has not required" the registration of stock received pursuant to "stock bonus plans," which it explains "are plans under which an employer awards shares of its stock to covered employees at no direct cost to the employees." 1980 Release at *15.  The 1980 Release explains that "[w]hile … a security," "there is no 'sale' in the 1933 Act sense to employees, since such persons do not individually bargain to contribute cash or other tangible or definable consideration to such plans." *Id.*

---

[3]  The 14-A Proxy Statement and Q3 2017 Form 10-Q that the SEC now cites in support of its theory that stock was issued pursuant to "separately bargained-for consideration," *see* Opp. at 7 n.4, all involved shares issued pursuant to the Company's 2013 Plan.  Though the SEC notes that public filings show different stock unit amounts granted to various employees, there is no allegation nor case law suggesting that stock units issued in different amounts through a compensation benefit plan render the stock individually bargained-for consideration.  In fact, nearly all of the shares issued during the Relevant Period were issued as part of company-wide grants—not through individual employment agreements. The public filings show that during the Relevant Period, just six employees (Division President, Chief Executive Officer, Chief Financial Officer, Executive Vice President, and two Vice Presidents), four board directors, and one brand ambassador received shares under the 2013 Plan pursuant to individual agreements.

**Sequential Brands' Form S-8 Filings Do Not Confer Standing to Bring Securities Act Claims.** The SEC wrongly asserts that by alleging the Company filed Form S-8 registrations in connection with its benefit compensation plan (Compl. ¶¶ 23-24), it satisfies the "in the offer or sale" requirement of Section 17(a)(3). Opp. at 9 (collecting cases). The SEC's cases—none of which address allegations at the pleading stage—simply do not go so far as to find that in this Circuit alleging the filing of Form S-8 registrations alone is sufficient to bring a Section 17(a)(3) charge. *See* Opp. at 9 (citing *SEC v. ITT Educ. Servs., Inc.*, 303 F. Supp. 3d 746, 780 (S.D. Ind. 2018) (summary judgment order where the SEC alleged stock options offered to employees had an allegedly "inflated value" based on statements made in Form S-8 registrations that concealed the increasing liabilities the defendant-company faced)); *SEC v. Stanard*, 2009 WL 196023, at *27 (S.D.N.Y. Jan. 27, 2009) (an unpublished case, entering judgment against defendants following a bench trial after making a factual finding that defendant made "false statements" to investors and concluding as a matter of law that those false statements were "contained in" its "prospectus supplements and Form S-8" satisfied Section 17(a)); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 862-63 (S.D.N.Y. 1997) (granting summary judgment against individual defendant after finding he "participated in schemes to inflate" the defendant-company's income "by the unlawful sale of unregistered common stock" and the Form S–8 registration statements "closely linked to the offer and sale of [defendant-company's] stock"), *aff'd*, 159 F.3d 1348 (2d Cir. 1998)). The Complaint therefore fails to plead an "offer or sale of any securities." 15 U.S.C. § 77q(a)(3).

> **B.    The Complaint Fails to Plead Scheme Liability, Including under *Lorenzo*.**

The Complaint fails to plead scheme liability, which must be established under Section 17(a)(3). *See* Mot. at 10-13 (citing *SEC v. Kelly*, 817 F. Supp. 2d 340, 345 (S.D.N.Y. 2011) ("[S]ubsections (1) and (3) of Section 17(a) apply to scheme liability.")). Courts in this Circuit

have definitively held that to state a claim under Section 17(a)(3) the "SEC [must] allege[] that [Sequential Brands] 'undertook a deceptive scheme or course of conduct that went beyond the misrepresentations . . . that are covered by Section 17(a)(2).'" *SEC v. Stoker*, 865 F. Supp. 2d 457, 467 (S.D.N.Y. 2012) (internal citations and quotations omitted); *see also Kelly*, 817 F. Supp. 2d at 343-44 ("[C]ourts have routinely rejected the SEC's attempt[s] to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'").  The SEC has failed to make such a showing.  All of the Complaint's scheme liability allegations are "premised on [] misrepresentation[s]," *id.*, that the SEC alleges Sequential Brands made in its public filings, *see* Compl. ¶¶ 7, 142; Opp. at 10-11. And while the SEC makes clear that it disagrees with the Company's process in determining whether, when, and by how much goodwill should be impaired, Compl. ¶¶ 67-69, 76-79, there is not one allegation of an inherently bad act evidencing any intent to deceive investors.  *See* Mot. at 12 (*citing SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010) (listing examples of bad acts)). In response, the SEC argues that *Lorenzo*, 139 S. Ct. at 1094, commands a different outcome.  It is wrong.

First, as the SEC admits, *Lorenzo* explicitly did not involve a Section 17(a)(3) claim.  Opp. at 12 n.7; *Lorenzo*, 139 S. Ct. at 1100 ("[W]e consider only the first subsection, § 17(a)(1).").  In fact, there is just one published case in which *any* Circuit or district court has expanded *Lorenzo* to Section 17(a)(3).  *See Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019).  Indeed, the only court in this Circuit that saw fit to expand *Lorenzo* to Section 17(a)(3) did so in an unpublished opinion because the complaint "allege[d] that the defendants' entire business model, *beyond* any misstatements or omissions, is deceptive."  *SEC v. SeeThruEquity*, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) (emphasis added); *see also SEC v. Ustian,* 2019 WL 7486835, at *40

(N.D. Ill. Dec. 13, 2019) (declining to rely on *Lorenzo* and noting that the *SeeThruEquity* complaint alleged a separate deceptive scheme).  Permitting an expansion of *Lorenzo* here, where the SEC's allegations boil down to its own subjective belief that the Company "unreasonably ignored objective evidence of goodwill impairment," Opp. at 10, would be an outrageous expansion of the SEC's jurisdiction that would eviscerate the distinction between Sections 17(a)(1) and 17(a)(3) altogether.  *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999) (noting that Sections 17(a)(1)-(3) differ in that "no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3)").

Second, even if *Lorenzo* was applicable in the 17(a)(3) context (which it is not), the SEC has failed to meet the standard set forth in *Lorenzo*.  Indeed, *Lorenzo* does not hold "that misstatements alone are sufficient to trigger scheme liability." *SEC v. Rio Tinto PLC*, 2021 WL 818745, at *2 (S.D.N.Y. Mar. 3, 2021) (rejecting the SEC's argument that *Lorenzo* holds that "misstatements can form the basis of liability under Rule 10b-5(a) and (c) and § 17(a)(1)").  Rather, it only imposes liability on those "who disseminate false or misleading statements to potential investors **with the intent to defraud**." *Id.* (emphasis added).  As such, all of the cases cited by the SEC in which scheme liability was established under *Lorenzo* involved inherently deceptive schemes, wherein the defendants plainly acted in bad faith and cheated investors for their personal profit.[4]   Here no such scheme has been alleged.  In fact, the SEC's

---

[4]  *See Lorenzo*, 139 S. Ct. at 1099 ("Lorenzo sent two e-mails to prospective investors . . . describ[ing] . . . Waste2Energy as having . . . $10 million in 'confirmed assets' after he was told "its total assets . . . amounted to $370,552."); *Malouf,* 933 F.3d at 1254 (involving failure of defendant, who did not to disclose a conflict of interest, to "seek competing bids for the trades"); *SEC v. Winemaster*, 2021 WL 1172773, at *23-24 (N.D. Ill. Mar. 29, 2021) ("[T]he SEC has pleaded here a scheme to artificially inflate PSI's revenue figures."); *SEC v. Sugarman*, 2020 WL 5819848, at *1 (S.D.N.Y. Sept. 30, 2020) ("Sugarman and Galanis, along with their associates, perpetuated a massive fraud in which they stole approximately $43 million from investors to finance the acquisition of a global financial conglomerate."); *SEC v. SeeThruEquity, LLC*, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) ("The complaint alleges that the defendants' entire business model, beyond any misstatements or omissions, is deceptive."); *SEC v. Fiore*, 416 F. Supp. 3d 306, 321

allegation that the Company engaged in "deceptive practices in order to conceal its goodwill impairment from **purchasers and the investing public**," *see* Opp. at 14-15 (emphasis added), is directly contradicted by the allegations in the Complaint and the SEC's concession that its 17(a)(3) claim rests upon Sequential Brands' issuance of some stock to a handful of insiders, *see* Opp. at 6. These employees, consultants, and directors did not purchase the stock at issue, *see supra* Section I(A), and nearly all of the stock recipients—including Company executives and directors—had full access to Sequential Brands' goodwill impairment testing. The Company made no profit, and the recipients were not harmed. *See* Mot. at 10 (noting that just .4% of shares issued to insiders vested during the Relevant Period). The SEC has failed to plead scheme liability.

### C.     The Complaint Fails to Prove Falsity.

#### 1.     Goodwill Statements Are Not Actionable As Opinion Statements under *Omnicare.*

Sequential Brands' statements about goodwill in its SEC filings in Q4 2016 through Q3 2017 are opinion statements under *Omnicare,* 575 U.S. at 175, and are not actionable. The SEC does not cite a single case where a Company's statements about goodwill were analyzed as statements of fact, as opposed to opinion statements under *Omnicare*. In fact, the additional authorities cited by the SEC analyze goodwill statements as opinion statements. *See* Opp. at 17 (citing *Zwick Partners, LP v. Quorum Health Corp.*, 2018 WL 2933406, at *5-7 (M.D. Tenn. Apr. 19, 2018); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2011 WL 12855820, at *6 (N.D. Ala. June 7, 2011)).

---

(S.D.N.Y. 2019) (extending *Lorenzo* to Section 17(a)(1) but declining to extend it to Section 17(a)(3) and finding "the SEC alleges a deceptive scheme involving multiple forms of market manipulation, as well as various misstatements or omissions, which . . . allow[ed] Fiore to sell his shares at a profit"); *Set Cap. LLC v. Credit Suisse Grp. AG*, 2019 WL 3940641, at *14 (S.D.N.Y. Aug. 16, 2019) (not extending *Lorenzo* to Section 17(a)(3) and alleging a "scheme" that "cost investors $1.8 billion while at the same time allowing Credit Suisse to realize more than $475 million in gains"), *aff'd in part, vacated in part, remanded sub nom. Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64 (2d Cir. 2021).

The absence of supporting case law for the SEC's theory is unsurprising given the "well-settled [law] in the Second Circuit that goodwill estimates are opinion statements because they 'depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact' and 'will vary depending on the particular methodology and assumptions used.'" *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774, at *10 (S.D.N.Y. Sept. 30, 2016) (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-11 (2d Cir. 2011)). The SEC's attempt to distinguish this controlling authority by arguing that statements about goodwill are only opinion statements where they concern the "subjective question of valuation, *i.e.*, the application of management's accounting judgment to determine the amount of goodwill," fails. Opp. at 16 (emphasis removed).[5] Indeed, both "estimating and determining whether to test for impairment of goodwill" require the application of management's accounting judgment. *See Fait*, 655 F.3d at 113. In Q4 2016, an interim period, Sequential Brands conducted a qualitative assessment, considering many factors, including the stock price decline, to reach its *opinion* that an interim goodwill impairment was not necessary. *See* Mot. at 15. The SEC does not dispute this. Rather the SEC focuses on the Company's market capitalization, which it alleges the Company "ignored and concealed." Opp. at 16. Setting aside the impossibility of concealing the Company's market capitalization—a calculation observable literally by anyone, alleging a public fact was ignored does not transform a statement of opinion into one of fact.

Moreover, as the Supreme Court in *Omnicare* explained, statements of fact express certainty, whereas statements of opinion do not. 575 U.S. at 176. Statements about goodwill are

---

[5] Under the SEC's own standard, the Company's goodwill statements in Q3 2017 would be statements of opinion because Sequential Brands conducted a "subjective valuation" of goodwill using the discounted cash flow methodology, which it reconciled to the market capitalization. Compl. ¶¶ 116-124. There is no dispute that statements in this quarter should be analyzed as statements of opinion under *Omnicare*.

quintessential opinion statements because they are "estimates" of fair value at a certain period of time and there "may be a range of prices with a reasonable claim" to being fair value. *See Fait*, 655 F.3d at 110. The Company's public filings stated that its goodwill statements are subject to such uncertainty and require the use of judgment in accordance with GAAP. *See* Dkt. 13-2 at 17 (FY 2016 Form 10-K) ("As a result of changes in market conditions and declines in the estimated fair value of these assets, we may, in the future, be required to write-down a portion of this goodwill and other intangible assets and such writedown [sic] would adversely affect our results of operations."); *id.* at F-11 ("Qualitative factors considered include, for example, macroeconomic and industry conditions, overall financial performance, and other relevant entity-specific events."). The fact that Sequential did not preface its goodwill statements elsewhere with the word "believe" is of no event. In *Fait*, the Second Circuit found that similar language did not reflect a "guarantee[]" of value, and accordingly, analyzed the goodwill statements as opinions.[6] 655 F.3d at 110 n.3. Likewise, the Company's goodwill statements are opinions that should be analyzed under the *Omnicare* standard.

## 2.   The SEC Fails to State a Claim under *Omnicare*.

The parties agree on the standard of review for opinion statements under *Omnicare*. Mot. at 14; Opp. at 17-18. The SEC's threadbare allegations however fail to meet this standard.[7] First, the SEC alleges that "facts inconsistent with Sequential's SEC filings were never disclosed." Opp. at 21. It is not enough that there be contrary facts; those contrary facts must have been material to

---

[6] Compare *Fait*, 655 F.3d at 110 n.3 (defendant's Form 10-K: "Adverse changes in the economic environment, declining operations of the business unit, or other factors could result in a decline in implied fair value of excess purchase price") to Dkt. 13-2 at 17 (FY 2016 Form 10-K), *supra*.

[7] The SEC's opposition only addresses alleged misrepresentations in Q4 2016 through Q2 2017. The SEC does not explain how Q3 2017 was materially misleading to a reasonable investor. Mot. at 17. For reasons stated in the Motion, the Court should dismiss the SEC's allegations relating to Q3 2017.

a reasonable investor and not otherwise publicly known.  *See In re Lehman Bros. Sec. & Erisa Litig.*, 131 F. Supp. 3d 241, 254 n.68 (S.D.N.Y. 2015) ("While a reasonable investor undoubtedly expects that an issuer's opinion statement 'fairly aligns with the information in the issuer's possession at the time,' the reasonable investor 'does not expect that every fact known to an issuer supports its opinion statement.'" (quoting *Omnicare,* 575 U.S. at 176)).

The SEC's principal allegation that Sequential "hid from investors" when it conducted two market capitalization calculations, even if assumed to be true, does not make Sequential's goodwill disclosures materially misleading.  *See* Opp. at 18.  First, the market capitalization is based entirely on publicly available information; it cannot be concealed from the public.  Second, Sequential considered the stock price decline, which drives the market capitalization value.  *See* Mot. at 15.  The SEC does not dispute these facts nor explain how not disclosing the fact of the market capitalization calculations (when Sequential Brands considered the stock price decline) rendered its goodwill opinion even remotely misleading, let alone in a material way.

Second, the SEC argues that Sequential's internal goodwill impairment memorandum "cherry-picked the evidence most favorable to Sequential and ignored other ASC 350 factors." Opp. at 19.  In its Complaint, the SEC does not identify all of the factors Sequential considered in its internal goodwill impairment memorandum.  Compl. ¶¶ 72-79.  Having failed to identify the factors that were ***already*** considered in the memorandum, the SEC has not established that Sequential "cherry-picked" factors and omitted "other" negative factors.  *See, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (finding that where Plaintiff failed to identify the "negative factors and assumptions Defendants ***already incorporated*** into their goodwill valuation," Plaintiff "cannot demonstrate that Defendants were aware of ***additional*** 'facts and circumstances' that would have indicated

13

[impairment]." (emphases added)).    For the same reason, the SEC cannot establish that Sequential's goodwill statements were made without "reasonable basis." Opp. at 21.[8]

Third, the SEC argues that Sequential "did not conduct a meaningful inquiry before making the statements at issue here and did not have a reasonable factual basis for those statements." *Id.* In *Omnicare*, the Supreme Court explained that a company's statement that its "conduct is lawful" may be misleading where a company does not consult a lawyer.  575 U.S. 175 at 188.  Similarly, a statement that "goodwill is not impaired" may be misleading where a company does not consult GAAP experts—in this case, its independent auditors.  Here, Sequential did consult its independent auditors and shared its goodwill impairment memorandum with them (which they reviewed).  The SEC does not dispute these facts.  Compl. ¶¶ 78-79.  Instead, the SEC conveniently omits the contrary testimony of Sequential Brands' independent auditors.  Opp. at 21.  If the Company's goodwill statements were without "reasonable basis," its independent auditors would be obligated to change their opinions.  The absence of a withdrawal should be fatal to the SEC's claims.[9]

---

[8] The SEC has not alleged sufficient "red flags" as in *Zwick*, 2018 WL 2933406, at *6, because, unlike in *Zwick*, the SEC has failed to allege "the assumptions underlying" the Company's goodwill impairment analysis. The Court cannot, thus, assess whether the allegations constitute material, contrary facts ***that were disregarded.***  *See City of Dearborn Heights*, 856 F.3d at 619 (emphasis added).  The SEC's other authorities are inapposite.  In *Local*, the Court found the allegations were well-pleaded based upon numerous confidential witness statements that established that Defendants improperly classified loans and ignored the collapsing real estate market.  *Loc. 703.*, 2011 WL 12855820, at *6-7. Here, the SEC ignores the extensive witness testimony and does not allege that the Company ignored the stock price decline.  In fact, the Company's witnesses testified that based upon their analysis, the "fundamentals of the business" were still intact despite the stock price decline.  Compl. ¶ 137.  In *BP*, the Court found, on summary judgment, that Defendant's statements about an oil spill ignored key internal data that made its public statements about the oil spill flow rate misleading.  *BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *14 (S.D. Tex. May 31, 2016). Unlike the internal risk analyses in *BP*, the market capitalization here is based on public information.

[9] *Ustian* does not concern goodwill impairment.  There, the court found Defendant had no reasonable basis for his statement about the launch date of a product where he knew, based on conversations with product engineers, the product would not launch in the time frame he provided.  *Ustian*, 2017 WL 365572, at *18.  Goodwill impairment decisions are not rote calculations; such decisions require exercising judgment in weighing the various factors, which courts acknowledge may be challenging.  *Fait*, 655 F.3d at 110-11.  In fact, none of the individual factors of events and circumstances in ASC 350, including stock price decline, are "intended to represent standalone events . . . that necessarily require an

## II.    The Accounting & Internal Controls Claims (Counts 3 & 4) Lack Merit.

If the Court correctly dismisses the Section 17 allegations, the Section 13 allegations must similarly fail because one presumes the truth of the other.  The SEC continues to assert that this case is "not about subjective accounting judgment," but rather Sequential ignoring "objective facts in its possession showing goodwill was likely impaired."  Opp. at 26.  This argument cannot sustain a Section 13(b)(2)(A) violation because it is both incorrect and circular.

With respect to the SEC's internal controls allegations under Section 13(b)(2)(B), the SEC continues to assert that a "single internal accounting control" was deficient without pointing to any requirement that overlapping and *multiple* internal controls are required in this instance.  Opp. at 28-29.  While the SEC may believe more controls are always better, there is no requirement that controls overlap or do more than "provide reasonable assurances" that the company's financial statements can be prepared "in conformity with [GAAP]."  15 U.S.C. § 78m(b)(2)(B).[10]  And if the Court finds that the SEC has failed to plead a valid Section 17(a)(3) allegation, then there is no basis for the Court to conclude that Sequential's internal controls were anything other than working properly.  The Section 13 claims should similarly be dismissed.

## CONCLUSION

For all of the foregoing reasons, and those outlined in the Motion, the SEC's Complaint should be dismissed with prejudice and Sequential should finally be able to put this matter to rest after nearly three years of scorched-earth investigation.

---

entity" to conduct an interim test.  *See, e.g.*, *City of Dearborn Heights*, 856 F.3d at 617 (citing ASC 350).  The SEC's framing of interim goodwill impairment as a rote calculation flies in the face of GAAP.

[10]  The SEC filed a blog post from the website www.radicalcompliance.com, authored by Matt Kelly, who is neither an attorney nor appears to be employed by the SEC.  *See* Dkt. No. 20.8.  The post, *see* Opp. at 28-29, published after the SEC filed its Complaint, should be stricken as improper and untimely, and far afield of the allowed support at the Motion to Dismiss stage.  It is nothing more than Mr. Kelly's shorthand description of the SEC's Complaint, and should be given no weight in the Court's decision.

Dated: New York, New York        Respectfully Submitted,
          June 10, 2021

                                 GIBSON, DUNN & CRUTCHER LLP

                                 By:      */s/ Mary Beth Maloney*

                                      Mark A. Kirsch
                                      Mary Beth Maloney
                                      GIBSON, DUNN & CRUTCHER LLP
                                      200 Park Avenue
                                      New York, New York 10166
                                      Telephone: (212) 351-4000
                                      E-mail: mkirsch@gibsondunn.com
                                      E-mail: mmaloney@gibsondunn.com

                                      Monica K. Loseman
                                      GIBSON, DUNN & CRUTCHER LLP
                                      1801 California St.
                                      Denver, Colorado 80202
                                      Telephone: (303) 298-5700
                                      E-mail:  mloseman@gibsondunn.com


                                      *Counsel for Defendant Sequential Brands
                                      Group, Inc.*