UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

SECURITIES AND EXCHANGE
COMMISSION,
                                        Plaintiff,                       20-CV-10471 (JPO)

                -v-                                                      OPINION AND ORDER

SEQUENTIAL BRANDS GROUP, INC.,
                                        Defendant.

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

  The United States Securities and Exchange Commission ("SEC") brought this action against Sequential Brands Group, Inc. ("Sequential"), alleging that Sequential engaged in negligence-based fraud when it failed to consider evidence of likely goodwill impairment. As a result, the SEC asserts violations of Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3); Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13 promulgated thereunder, 17 C.F.R. §§ 240.12b-20, 13a-1, 13a-11, and 13a-13; Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A); and Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B). Sequential moves to dismiss the complaint for failure to state a claim. For the reasons that follow, Sequential's motion to dismiss is denied.

**I.  Background**

  **A.  Factual Background**

  Sequential Brands Group, Inc. is a publicly traded "New York-based brand management company." (Dkt. No. 1 ("Compl") ¶ 1.) It "owns and manages a portfolio of consumer brands and promotes, markets, and licenses those brands through retailers, wholesalers, and distributors in the United States and abroad." (Compl. ¶ 45.) Because Sequential acquired these consumer brands through acquisitions, it has "substantial goodwill on its balance sheet." (Compl. ¶ 46.)

1

"Goodwill" is "an intangible asset" that represents "the portion of the purchase price that is higher than the sum of the net fair value of all of the assets purchased in the acquisition and the liabilities assumed in the process." (Compl. ¶ 5.) It reflects, for example, the "value of a company's brand name, customer base, customer relations, employee relations, and proprietary technology." (Compl. ¶ 5.) A goodwill impairment reflects "a permanent decline in the value" of goodwill. (Compl. ¶ 5.) It is "an accounting charge that companies record when goodwill's carrying amount on the financial statements exceeds its implied fair value." (Compl. ¶ 32.)

Generally Accepted Accounting Principles ("GAAP") require public companies like Sequential to "test goodwill for impairment at least annually, or on an interim basis when indicators, or 'triggering events,' are present." (Compl. ¶ 33.) Financial Accounting Standards Board's Accounting Standards Codification ("ASC") 350 provides that goodwill shall be tested for impairment between annual tests if an event occurs or circumstances change that would more likely than not reduce the fair value of a reporting unit below its carrying amount.

During the relevant time period, ASC 350 outlined "a multi-step process for assessing whether goodwill is impaired." (Compl. ¶ 36.) Companies could "conduct a threshold qualitative assessment of goodwill as a preliminary step . . . to evaluate whether the carrying amount . . . of a reporting unit was more likely than not greater than its fair value." (Compl. ¶ 36.) If it was, then "more rigorous quantitative testing" was required. (Compl. ¶ 36.) If it was not, then "no further assessment was necessary." (Compl. ¶ 36.)

Alternatively, ASC 350 provided that a company could skip the "qualitative assessment and instead proceed directly to a quantitative assessment of fair value." (Compl. ¶ 37.) If that assessment "indicated that [the company's] carrying amount likely exceeded fair value, then ASC 350 required the company to conduct further quantitative testing . . . to measure the

magnitude of the impairment to goodwill." (Compl. ¶ 37.)  In such circumstances, "the goodwill on the financial statements [had to be] adjusted downward, with the residue recognized as an impairment loss."  (Compl. ¶ 37.)

Sequential stated in public filings that it would follow this framework.  In public filings, it stated that to evaluate goodwill, it would "first assess[] qualitative factors to determine whether it is more likely than not that the fair value of a reporting unit is less than its carrying amount."  (Compl. ¶ 43.)  But if it "bypasses the qualitative assessment, or concludes that it is more likely than not that the fair value of a reporting unit is less than its carrying value, it [would] then perform[] a two-step goodwill impairment test to identify potential goodwill impairment and measure the amount of goodwill impairment to be recognized, if any."  (Compl. ¶ 43.)  At the first step, it would "compare the estimated fair value of the reporting unit to the carrying value."  Sequential stated that it "consider[ed] its market capitalization (calculated as total common shares outstanding multiplied by the common equity price per share, as adjusted for a control premium factor) to represent its fair value."  (Compl. ¶ 43.)  At the second step, if the fair value was less than the carrying amount, it would "calculate the implied fair value of the reporting unit goodwill to determine whether any impairment is required."  (Compl. ¶ 43.)

In the fourth quarter of 2016, Sequential conducted its annual evaluation of its goodwill as of October 1, 2016.  (Compl. ¶ 62.)  For that assessment, the company retained an "external valuation consultant to conduct a quantitative assessment" of fair value, using "market capitalization . . . adjusted for a control premium factor."  (Compl. ¶ 60.)  The consultant assessed Sequential's market capitalization and gave Sequential a report concluding that its goodwill was not impaired.  (Compl. ¶ 61.)  But Sequential's "stock price had been declining for over a year" (Compl. ¶ 54), and had continued to fall after October 1, 2016 (Compl. ¶ 64), so

upon receipt of the report, Sequential's audit committee chair asked whether the company passed the test as of December 14, 2016 (Compl. ¶ 64). In response, Sequential's senior accounting and finance personnel assessed Sequential's goodwill using the same quantitative methodology as the external valuation consultant. (Compl. ¶ 65.) That assessment showed that Sequential's fair value had fallen below the company's carrying amount by $63 million. (Compl. ¶ 65.) Sequential's senior accounting and finance personnel subsequently assessed Sequential's goodwill as of December 31, 2016. (Compl. ¶ 66.) That assessment showed that Sequential's fair value had fallen below the company's carrying amount by $96 million. (Compl. ¶ 66.)

After receiving these reports, Sequential did not share the analyses with the company's independent auditor. (Compl. ¶ 67.) Instead, Sequential's senior accounting and finance personnel conducted a further qualitative assessment to evaluate its goodwill. (Compl. ¶ 69.) As alleged, this assessment omitted several negative events related to fair value, including (i) that retail shoe sales were trending downward; (ii) that one of Sequential's key brands was in decline; (iii) that costs for that brand were substantially higher than anticipated; (iv) that bad debts were increasing; (v) that other key brands were declining; (vi) that Sequential's EBITDA had been dropping since 2014; and (vii) that Sequential had conducted two quantitative analyses that showed impairment as of December 16, 2016, and December 31, 2016. (Compl. ¶¶ 76–77.) This qualitative analysis concluded that Sequential's goodwill was not impaired. (*See* Compl. ¶ 77.)

The complaint alleges that Sequential subsequently made several material misstatements in public filings as a result. In Sequential's 8-K for the fourth quarter of 2016, Sequential allegedly overstated goodwill by over $100 million; overstated earnings; and understated its net losses. (Compl. ¶¶ 89–91.) Sequential allegedly did the same in its 10-K for 2016 as a whole.

(Compl. ¶¶ 92–93.)  Also, in the 10-K, although Sequential disclosed its methodology for calculating goodwill, it allegedly did not disclose that it had conducted market capitalization analyses for the fourth quarter showing that the company's carrying amount likely exceeded fair value; did not quantify the goodwill impairment based on this finding; and instead conducted a qualitative assessment that omitted the market capitalization calculation.  (Compl. ¶¶ 94–96.)

The complaint further alleges that Sequential made material misstatements in its public filings for the first and second quarters of 2017.  Because Sequential carried over its goodwill, and did not conduct an interim test, it allegedly overstated goodwill; overstated total assets; understated accumulated deficit; and overstated stockholders' equity.  (Compl. ¶¶ 101–105, 108–111.)  It again restated its methodology for assessing goodwill.  (Compl. ¶¶ 106–107, 112–113.)

The complaint also alleges that Sequential made material misstatements in its public filings for the third quarter of 2017.  It alleges that Sequential "changed its goodwill impairment methodology" because it anticipated that it likely would not pass its annual goodwill impairment test "using its disclosed market capitalization, plus control premium, methodology."  (Compl. ¶¶ 114–115.).  It further alleges that this new methodology reflected "discounted cash flow" as well as "subjective opinions that the market undervalued the [c]ompany."  (Compl. ¶¶ 116–117.)  Using this methodology, the company found goodwill not to be impaired.  (Compl. ¶ 118.)  Because the company did not find an impairment, the complaint alleges that the company overstated goodwill; overstated total assets; understated accumulated deficit; and overstated stockholders' equity.  (Compl. ¶¶ 120–122.)  Further, the complaint alleges that the company failed to disclose that there was a difference between the fair values calculated by its market capitalization analyses and its new methodology; that its new methodology relied heavily on subjective opinion; and other related misstatements.  (Compl. ¶ 124.)

Sequential fully impaired its goodwill by $304.1 million in the fourth quarter of 2017. (Compl. ¶ 125.) Throughout the relevant period, the complaint alleges that Sequential had in place only "one internal control concerning goodwill impairment testing." (Compl. ¶ 128.) That control instructed the Director of Accounting and External Reporting to "complete[] an impairment assessment of Goodwill and Intangible Asset accounts to determine if an impairment of the intangible asset has occurred" on "an annual basis" or "as triggering events occur." (Compl. ¶ 128.) It also instructed the director to provide "a memo detailing the review" to the Chief Financial Officer and Vice President of Finance. (Compl. ¶ 128.) The complaint alleges that Sequential's senior accounting and finance personnel did not follow this protocol and did not have evidence and documentation to support the findings on goodwill. (Compl. ¶¶ 130–131.)

### B.     Procedural History

The SEC filed this action against Sequential on December 11, 2020. (*See* Compl.) The first cause of action asserts that Sequential violated Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3) because "in connection with the offer to sell or sale of securities," Sequential "engaged in any transaction, practice or course of business which operated or would have operated as a fraud or deceit on purchasers of Sequential's securities." (Compl. ¶¶ 139–147.) These alleged deceptive practices included Sequential's "fail[ure] to appropriately test its goodwill for impairment and timely record an impairment" and Sequential's "drafting, making, and disseminating repeated material misstatements in its" public filings. (Compl. ¶¶ 141, 146.)

The second cause of action asserts that Sequential violated Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), as well as Rules 12b-20, 13a-1, 13a-11, and 13a-13 promulgated thereunder, 17 C.F.R. §§ 240.12b-20, 13a-1, 13a-11, and 13a-13, because Sequential made public filings containing material misstatements and omissions. (Compl. ¶¶ 148–155.) These misstatements and omissions included overstating goodwill, total assets, and stockholders'

equity; understating net losses and accumulated deficit; and failing to update disclosures to "advise investors Sequential had abandoned the market capitalization approach to determine . . . fair value . . . in impairment testing." (Compl. ¶¶ 151–153.)

The third cause of action asserts that Sequential violated Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A), by failing to comply with its obligation to make and keep books, records, and accounts to accurately reflect the position of their assets. (Compl. ¶¶ 156–159.) Sequential allegedly transgressed this obligation when it "improperly failed to record an impairment expense and impair goodwill." (Compl. ¶ 158.)

The fourth and final cause of action asserts that Sequential violated Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), which requires companies to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in conformity with Generally Accepted Accounting Principles. (Compl. ¶¶ 160–166.) The complaint alleges that the assessment "lacked a consistent approach"; that the "internal accounting controls surrounding reviews for interim impairment triggering events were insufficient to establish a reasonable process for identifying triggering events"; and that such controls "failed to require the documentation of such process, unless triggers were identified." (Compl. ¶¶ 163–164.)

Defendants have moved to dismiss the complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. No. 11.)

## II.     Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

### III. Discussion

Sequential moves to dismiss the first two causes of action on the grounds that the SEC does not plead an "offer or sale" of securities; that the alleged "deceptive course of conduct" cannot serve as a basis for "scheme liability"; that the complaint does not identify any false statements; and that any misrepresentations were immaterial.  Sequential moves to dismiss the third and fourth causes of action on the grounds that the SEC does not plead any accounting violation or raise an inference of inadequate controls.

    **A.**    **The SEC's Claim that Sequential Violated Section 17(a)(3) of the Securities Act and Section 13(a) of the Exchange Act.**

        **1.**    **"Offer or Sale"**

Section 17(a)(3) of the Securities Act provides that it is unlawful for any person "in the offer or sale of any securities . . . to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."  15 U.S.C. § 77q(a)(3).  Sequential moves to dismiss first on the ground that the SEC has not adequately pleaded that Sequential offered or sold any securities during the relevant time period.

The SEC has alleged an offer or sale during the relevant period.  The complaint alleges that Sequential "registered securities pursuant to a registration statement on [a] Form S-8," which "is used when companies issue stock as part of an employee benefit plan, including incentive plans, profit-sharing, bonus, options, or similar opportunities." (Compl. ¶ 23.)  It further alleges

8

that Sequential subsequently "issued restricted stock units and performance stock units to employees and third-party consultants, as well as restricted stock to directors, pursuant to employment or consulting agreements" during the relevant period. (Compl. ¶ 24.)

Those allegations raise an inference of an offer or sale of securities. Section 2(a)(3) of the Securities Act instructs that "[t]he term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value," and "[t]he term 'offer to sell', 'offer for sale', or 'offer' shall include every attempt to offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value." 15 U.S.C. § 77b(a)(3). An offer of a security "for value" includes at least those circumstances "where an employment relationship forms a part of the consideration for a contract to sell stock," *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 561 (2d Cir. 1985), and the parties agree at least that "allegation[s] of individually bargained-for shares" suffice (Dkt. No. 21 at 3; *see* Dkt. No. 19 at 7). Allegations in the complaint that Sequential issued shares "pursuant to employment or consulting agreements" are sufficient to raise an inference that those shares were "individually bargained-for." (Compl. ¶ 24.) That inference is further supported by the fact that Sequential registered this stock in a Form S-8, which "is a filing with the SEC, used by publicly-traded companies to register securities that will be offered to its employees via benefits or incentive plans." *SEC v. ITT Educ. Servs., Inc.*, 303 F. Supp. 3d 746, 775 (S.D. Ind. 2018) (citation omitted). Although Sequential disputes that the stock issued reflected individual consideration, that fact-intensive dispute is more properly resolved at a later stage of the litigation.

### 2. Scheme Liability

Sequential next moves to dismiss on the ground that the SEC has not raised an inference of "scheme liability." Section 17(a)(3) of the Securities Act parallels the SEC's Rule 10b-5(c), which makes it unlawful "[t]o engage in any act practice or course of business which operates or

would operate as a fraud or deceit." 17 C.F.R. § 240.10b-5. "Essentially the same elements are required under" either, *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999), and alleging "scheme liability" is necessary to state a claim, *see SEC v. Kelly*, 817 F. Supp. 2d 340, 345 (2d Cir. 1999). Ordinarily, "[t]o state a scheme liability claim, a plaintiff must show: '(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance," *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90 (2d Cir. 2021), though "no showing of scienter is required" to state a claim under Section 17(a)(3), *Monarch Funding Corp.*, 192 F.3d at 308.

The SEC has alleged that Sequential committed a deceptive act in furtherance of an alleged scheme to defraud. The complaint alleges that Sequential's accounting and finance personnel covered up quantitative evidence of an impairment to its goodwill by discarding that quantitative evidence, conducting a biased qualitative assessment, and ultimately changing its methodology to assess goodwill. (*See* Compl. ¶¶ 65–69, 77–79, 114–117.) That "course of conduct may not have been inherently unlawful, but it was deceptive." *SEC v. Sugarman*, No. 19 Civ. 5998, 2020 WL 5819848, at *7 (S.D.N.Y. Sept. 30, 2020) (finding deceptive a misleading memo presented to the board of directors regarding an acquisition). Those alleged acts were not isolated events; as alleged, they were part of a deliberate course of conduct continued for over a year. (*See* Compl. ¶¶ 65, 125.) And, as alleged, those acts resulted in regular misleading statements on public filings. (*See* Compl. ¶¶ 89–96, 109–124.)

Sequential argues that such allegations do not state a claim because "alleged misrepresentations or omissions" alone cannot serve as the basis for scheme liability. (Dkt. No. 12 at 11.) But a defendant can be liable under Section 17(a)(1) for "employ[ing] any device, scheme, or artifice to defraud," 15 U.S.C. § 77q(a)(1), and under Rule 10b-5(c) for "engag[ing]

in any act, practice, or course which operates or would operate as a fraud or deceit," 17 C.F.R. § 240.10b-5(c), where the defendant only "disseminate[d] false or misleading statements to potential investors with the intent to defraud," *Lorenzo v. SEC*, 139 S. Ct. 1094, 1099 (2019). It stands to reason that such conduct may also constitute "engag[ing] in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser" under Section 17(a)(3). *See Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019).

Many courts in the Second Circuit have come to the same conclusion: *Lorenzo* instructs that a plaintiff may make out a scheme liability claim by identifying manipulative or deceptive acts grounded in alleged misrepresentations or omissions. *See, e.g.*, *Puddu v. 6D Glob. Techs., Inc.*, No. 15 Civ. 8061, 2021 WL 1198566, at *11 (S.D.N.Y. Mar. 30, 2021) ("In line with the reasoning in *Lorenzo*, the Court sees no basis to conclude that a plaintiff may not establish, in a scheme liability claim, the existence of a 'manipulative or deceptive act' by pointing to alleged misrepresentations or omissions."); *SEC v. Fiore*, 416 F. Supp. 3d 306, 320 (S.D.N.Y. 2019) ("[T]he Supreme Court's recent ruling in *SEC v. Lorenzo* forecloses [D]efendants' . . . argument in this case."); *SEC v. SeeThruEquity, LLC*, No. 18 Civ. 10374, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) (rejecting argument "that the SEC inadequately alleges 'scheme' liability under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) because it fails to allege a deceptive act that is distinct from misstatements"). That practice is sensible, and it counsels against granting Sequential's motion on the ground that the SEC did not plead scheme liability.

### 3. Falsity

Sequential also moves to dismiss the first two causes of action on the ground that the SEC has not adequately alleged that Sequential made any false statements in public filings. Rule 12b-20, for example, requires companies to add to public filings "such further material information, if any, as may be necessary to make the required statements, in the light of the

circumstances under which they are made not misleading." 17 C.F.R. § 240.12b-20. But the complaint adequately alleges several misleading statements as well as false opinions.

*First*, the complaint adequately alleges that Sequential made misleading statements when it set out its methodology to assess goodwill. (*See* Compl. ¶ 43.) In setting out its order of operations to assess goodwill, and the factors it would consider, Sequential made falsifiable statements. (*See* Dkt. No. 19 at 15-16.) Ordinarily, "[t]he veracity of a statement or omission is measured . . . by its ability to accurately inform rather than mislead prospective buyers." *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010). Whether a statement is misleading is "evaluated not only by 'literal truth,' but by 'context and manner of presentation.'" *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019). As the SEC alleges, the structure of the disclosure raises an inference that there was no "circumstance under which [Sequential] might conduct a qualitative test after performing a quantitative test." (Compl. ¶ 44.) Further, the disclosure raises an inference that once Sequential had quantitative evidence suggesting an impairment, it would "proceed to the second step and calculate the implied fair value of the reporting unit goodwill." (Compl. ¶¶ 43, 95.)

*Second*, the complaint adequately alleges that Sequential was misleading when it stated that it "consider[ed] its market capitalization, as adjusted for a control premium, to represent its fair value." (Compl. ¶¶ 43–44.) A reasonable person would understand that statement to suggest that Sequential had considered its market capitalization when assessing the fair value of its goodwill. The complaint alleges that Sequential did not and so states a claim. (Compl. ¶ 96.)

*Third*, the complaint adequately alleges that Sequential reported a misleading assessment of goodwill. A goodwill determination is a statement of opinion. *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011). A statement of opinion is actionable (i) if "the speaker did not

hold the belief she professed," (ii) if "the supporting facts she supplied were untrue," or (iii) if "the speaker omits information whose omission makes the statement misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)).  A statement of opinion may be misleading based on an omission if the opinion does not "fairly align[] with the information in the issuer's possession at the time." *Omnicare*, 575 U.S. at 189.

The complaint raises an inference that Sequential's determination not to recognize a goodwill impairment did not fairly align with the information it had in its possession at the time. The complaint alleges that Sequential considered market capitalization to reflect the fair value of its goodwill (Compl. ¶ 44), and that Sequential had two quantitative assessments on market capitalization that both indicated that its goodwill was impaired (Compl. ¶¶ 65–66).  On the other side, the complaint alleges that Sequential had a biased qualitative assessment that omitted multiple relevant factors.  (Compl. ¶¶ 76–77.)  Assessing only the complaint at this stage, it cannot be said as a matter of law that Sequential's goodwill assessment reflected what it knew. Because these allegations suffice, dismissal on this ground is unwarranted.

### 4. Materiality

Sequential further moves to dismiss the complaint on the ground that any misrepresentation would be immaterial.  Materiality is rarely dispositive on a motion to dismiss. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010).  Alleged misstatements or omissions are immaterial as a matter of law only if they are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000).  It is enough to say that the alleged misstatements and omissions here may have "significantly altered the

'total mix' of information made available" to a reasonable investor. *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009).

The SEC alleges that Sequential neglected to recognize a goodwill impairment of around $100 million. The complaint alleges that if Sequential had recorded its purported impairment to goodwill in the fourth quarter of 2016, then the impairment would have equaled 7% of total assets, and Sequential's reported net loss for 2016 would have been 54 times larger. (Compl. ¶ 152.) That impairment would have turned earnings for fiscal year 2016 into a loss. (Compl. ¶¶ 82, 151.) Such an alleged impact raises an inference of materiality. *See ECA*, 553 F.3d at 204 (explaining that a "five percent numerical threshold is a good starting place for assessing the materiality of the alleged misstatement"); *cf. SEC v. Isaza Tuzman*, No. 15 Civ. 7057, 2017 WL 11606728, at *16 (S.D.N.Y. Sep. 29, 2017) (finding 3% overstatement of goodwill and $4 million reduction in receivables to be material). Beyond the fourth quarter of 2016, the complaint alleges that goodwill constituted more than one-fifth of Sequential's total assets. (Compl. ¶¶ 16, 46.). And the SEC alleges consequences for other financial metrics such as accumulated deficit and stockholders' equity. (*See, e.g.*, Compl. ¶¶ 101–105, 108–111.) Such allegations raise an inference that the alleged misstatements and omissions here were material.

### B. The SEC's Claim that Sequential Violated Section 13(b)(2)(A) and Section 13(b)(2)(B) of the Exchange Act.

Sequential also moves to dismiss the third and fourth causes of action in the complaint. Because the SEC has raised an inference of an accounting violation and a control violation, Sequential's motion to dismiss those causes of action fails as well.

#### 1. Accounting Violation

Section 13(b)(2)(A) requires a company to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the

assets of the issuer." 15 U.S.C. § 78m(b)(2)(A). The SEC has plausibly alleged violations here. For one, the SEC adequately alleges that there was "no reasonable basis under GAAP for Sequential to account for . . . goodwill . . . in the manner in which it did." (Compl. ¶ 87.) As alleged, under ASC 350, if a company skipped the "qualitative assessment [of fair value] and instead proceed[ed] directly to a quantitative assessment of fair value," and that quantitative assessment "indicated that [the company's] carrying amount likely exceeded fair value, then ASC 350 required the company to conduct further quantitative testing . . . to measure the magnitude of the impairment to goodwill." (Compl. ¶ 37.) And "the goodwill on the financial statements [had to be] adjusted downward, with the residue recognized as impairment loss." (Compl. ¶ 37.) The SEC alleges that Sequential conducted quantitative assessments of fair value that indicated impairment but did not measure the magnitude of impairment or adjust goodwill. (*See* Compl. ¶ 87.) Sequential appears to suggest in passing that it complied with ASC 350 because it ultimately conducted a qualitative assessment of goodwill that did not indicate impairment (Dkt. No. 12 at 23 n.18), but this argument is insufficiently developed to justify dismissal. *See Blagrove v. Deutsche Bank Nat'l Tr. Co.*, No. 19 Civ. 5357, 2021 WL 1601115, at *2 n.* (E.D.N.Y. Apr. 23, 2021) (citing *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013)).

      Further, as previously explained, the SEC has plausibly alleged that Sequential ignored compelling quantitative evidence that its goodwill was impaired. Because this impairment had consequences for other financial metrics, the SEC has also alleged other accounting errors. The complaint alleges that in the fourth quarter of 2016, Sequential's goodwill determination meant that Sequential allegedly overstated goodwill, income, and total assets, and understated operating expenses and net loss. (*See* Compl. ¶¶ 9–11, 81–83.) For the first three quarters of 2017,

15

Sequential's goodwill determination meant that Sequential allegedly overstated goodwill, total assets, and stockholders' equity; and understated accumulated deficit. (*See* Compl ¶¶ 91–93, 126–27, 151–52.) Sequential argues only that "[t]he only objective fact is that the [c]ompany's independent auditors, in full knowledge of the SEC's allegation, have not backed away from their finding that the [c]ompany's impairment analyses, controls, and books and records were appropriate." (Dkt. No. 12 at 22.) But that "fact" is not cognizable on a motion to dismiss, and in any event, "the actions of [Sequential]'s auditors are not dispositive of this claim, because '[t]o hold otherwise would shift to accountants the responsibility that belongs to the courts." *SEC v. Rio Tinto plc*, No. 17 Civ. 7994, 2019 WL 1244933, at *19 (S.D.N.Y. Mar. 18, 2019) (quoting *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002)). The SEC has raised an inference that Sequential committed accounting violations in keeping its books and records.

### 2. Control Violation

Finally, the SEC has plausibly alleged a control violation. Section 13(b)(2)(B) requires a company to "devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that . . . transactions are recorded as necessary . . . to permit preparation of financial statements in accordance with generally accepted accounting principles or any other criteria applicable to such statements, and . . . to maintain accountability for assets." 15 U.S.C. § 78m(b)(2)(B). A "reasonable" degree of assurance is one that "would satisfy prudent officials in the conduct of their own affairs." *Id.* § 78m(b)(7). Examples of internal controls include "manual or automated review of records to check for completeness, accuracy and authenticity; a method to record transactions completely and accurately; and reconciliation of accounting entries to detect errors." *McConville v. SEC*, 465 F.3d 780, 790 (7th Cir. 2006).

The complaint alleges that Sequential had in place only "one internal control concerning goodwill impairment testing," which instructed the Director of Accounting and External

16

Reporting to "complete[] an impairment assessment of Goodwill and Intangible Asset accounts to determine if an impairment of the intangible asset has occurred" on "an annual basis" or "as triggering events occur," and provide "a memo detailing the review" to the Chief Financial Officer and Vice President of Finance. (Compl. ¶ 128.) That allegation is sufficient to support an inference that only a few "personnel possessed all of the material information . . . , and that there were insufficient internal checks on their authority and discretion when it came to disclosing or making judgments based on that information," which is sufficient to state a claim. *SEC v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 34 (D.D.C. 2017).

### IV.   Conclusion

For the foregoing reasons, Defendant's motion to dismiss the complaint is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 11.

SO ORDERED.

Dated: September 30, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge